IN RE JACOB C. CALDWELL.

FILED OCTOBER 22, 1908. No. 15,556.

1. **Constitutional Law:** "SUNDAY LAW." Section 241 of the criminal code does not contravene the fourteenth amendment to the constitution of the United States, nor section 15, art. III of the constitution of Nebraska; nor is it repugnant to either section 1 or section 3, art. I of the Bill of Rights.

2. **Habeas Corpus:** MISDEMEANOR: DEFECTIVE COMPLAINT. After trial and conviction for an alleged misdemeanor, a prisoner will not be liberated on a writ of habeas corpus because of the insufficiency of the complaint in said criminal proceedings, if by any possible construction of the language employed therein an offense against the law is thereby even defectively stated.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Jefferis & Howell,* for appellant.

*H. S. Daniel, contra.*

*L. D. Holmes, amicus curiæ.*

ROOT, C.

Relator was convicted in the police court in Omaha of a violation of section 241 of the criminal code, being the "Sunday law." The complaint charged relator with unlawfully engaging in common labor, "said common labor

not being work of necessity or charity, to wit, did operate and manage a barber shop, wherein customers were shaved at the Paxton Hotel in the city of Omaha." A sentence of $1 and the costs of prosecution was imposed, and, to prevent the payment of $3.50, the extraordinary writ of habeas corpus was sought at the hands of the district court. In his application for the writ relator set out a complete copy of the complaint, warrant and record of conviction, and alleged generally that he was unlawfully detained of his liberty. The sheriff justified under his mittimus, and, from a consideration of said return and a demurrer filed to relator's application, the district court refused to liberate relator, and he appeals.

1. Counsel for plaintiff argue with great earnestness that the statute under consideration is repugnant to the fourteenth amendment to the constitution of the United States, and to section 15, art. III of the constitution of the state, and that it contravenes section 1 and section 3 of art. I of the Bill of Rights. It is conceded that, if the statute was intended to and does apply to every person in all vocations within the state, the constitutional objections referred to are not well taken. Without determining whether the law is so general in its application as to include every business and employment, we are not convinced that it is void for any of the reasons advanced by learned counsel. The fourteenth amendment to the constitution of the United States was not intended to interfere with the power of the several states, through their respective legislatures, to enact laws to promote the peace, health, morals, education and good order of the people within those commonwealths. Although the legislation may be limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, it is not obnoxious to said amendment. *Barbier v. Connolly,* 113 U. S. 27; *Wenham v. State,* 65 Neb. 394; *Cleland v. Anderson,* 66 Neb. 252. Nor does the constitution of Nebraska prohibit classification in the

38

application of the police power so long as the arrangement is not purely arbitrary. The wisdom of the discrimination is not for us to determine. If, from our knowledge of conditions existing at the time that the legislation was adopted, we can say that there was such a sensible distinction between the occupations properly grouped under the head of common labor and those without that term as to form a basis for judgment, then the act cannot be said to be void because of the constitutional inhibitions above referred to.

The statute under consideration, in common with the body of the present criminal code, was adopted by the legislature in 1873. At that time the people engaged in common labor in this state did not include many individuals enlisted in those employments recognized as unhealthy and proper subjects for regulations by law because of that fact. Unskilled labor then represented unorganized labor, the poorest paid and hardest worked of all mankind. With limited capital, or none at all, to provide for transportation to localities where greater demand might exist for his services, no laborer was so subject to long hours and incessant toil as the man without a trade, or who from force of circumstances was compelled to engage in unskilled work. There was, it seems to us, the best possible reasons for the legislature coming to the rescue of those who were "common laborers" within the popular definition of that term, and by law compelling the master to give to those toilers one day in seven wherein to rest. Nor does the fact that a mechanic or a business or professional man might during the particular day engage in common labor within the restricted definition render the classification uncertain or unjust. The man without a trade, business or profession could not engage in any other than common labor, and the more fortunate individuals are not likely to do so. The science of government is a practical one, and the fact that theoretically one may reason out a discrimination where one in practice would not exist is not a serious consideration in passing upon

the constitutionality of a statute.  Much less reasonable classifications have been upheld in *Liberman v. State,* 26 Neb. 464; *People v. Havnor,* 149 N. Y. 195, 52 Am. St. Rep. 707; *State v. Justus,* 91 Minn. 447, 103 Am. St. Rep. 521; *People v. Bellet,* 99 Mich. 151, 41 Am. St. Rep. 589; *State v. Sopher,* 25 Utah, 318, 95 Am. St. Rep. 845.

The argument that, by exempting railway companies from the penalty of the statute in running "necessary trains," the carrier is given the right to judge for itself the necessity of operating trains on Sunday, and therefore that the statute is void, does not appeal to us.  Work of necessity is excluded generally from the penalty of said statute.  Whether any particular work, or whether the running of any certain train, is a necessity is a mixed question of law and fact, to be settled in each case as it may arise.  The particular specification did not add anything to the general proviso, and neither strengthens nor weakens the act.  *Petit v. Minnesota,* 177 U. S. 164.

Nor can we subscribe to the claim of counsel that, as the votaries of the Koran observe Friday as a day of worship, they are improperly discriminated against in the operation of the law, because the Adventist and the Jew are permitted to pursue their avocations on the first day of the week if they observe the seventh day thereof. We doubt very much whether there were any disciples of Mahomet in Nebraska in 1873, and those who have emigrated to Nebraska since that day came here with full knowledge of the Sunday statute, and their appearance in our commonwealth will hardly render unconstitutional and void an act of the legislature that theretofore was valid.  Furthermore, there is nothing in the statute that discriminates between religious sects.  Any resident whose employment falls within the inhibition of the statute may choose between the first and the seventh day of the week wherein to refrain from labor, and if he observes the mandate of the law on either of those days, whether he be Gentile, Jew, Mohammedan, Pagan or Agnostic, he is safe from prosecution, not because of the religious signi-

ficance of the day in his eyes, but because he has obeyed
the command of the secular law to abstain from labor
upon one of the two days named. *Specht v. Common-
wealth,* 8 Pa. St. 312, 49 Am. Dec. 518. Unless the indi-
vidual ceases from labor, he does not observe the day
within the meaning of the statute, and if he does upon
either of said days refrain from labor he "observes" that
day. *Liberman v. State,* 26 Neb. 464; *Johns v. State,* 78
Ind. 332, 41 Am. Rep. 577; *People v. Bellet,* 99 Mich. 151,
41 Am. St. Rep. 589. We therefore hold against relator
as to the validity of the statute under which he was prose-
cuted.

2. We have examined with great care the record to
ascertain whether a writ should issue to save relator
harmless from the $1 fine imposed upon him, and con-
clude that he has not pursued the proper remedy. Sec-
tion 241 of the criminal code, under which it is admitted
that said complaint was filed, provides: "If any person
of the age of fourteen years or upward shall be found on
the first day of the week, commonly called Sunday, at
common labor (work of necessity and charity only ex-
cepted), he or she shall be fined in a sum not exceeding
five dollars nor less than one dollar." Section 18, art. VI
of the constitution, provides that police magistrates shall
exercise such jurisdiction as may be provided by law.
Section 7742, Ann. St. 1907, invests the police judge of
the city of Omaha with jurisdiction to try misdemeanors
arising under the laws of the state, in case the fine may
not exceed $100, or the imprisonment three months. We
therefore have the case of a prisoner before a court hav-
ing jurisdiction of the individual and of the offense, and
the question is whether after conviction that judgment
may be ignored and collaterally attacked. In considering
the averments of the complaint, they must in this proceed-
ing be read in the light of the judgment of conviction,
which cures every informality and insufficiency short of
absolute negation of the facts essential to constitute the
crime. *State v. Knowles,* 34 Kan. 393; *State v. Freeman,*

63 Vt. 496. Our decisions are not altogether harmonious as to the limit of a court's inquiry in habeas corpus proceedings. In *Ex parte Fisher,* 6 Neb. 309, we refused to consider the constitutionality of the statute under which the relator was convicted, and held that in habeas corpus proceedings the judgment of an inferior court was conclusive as to every question of law, as well as of fact, that might have been considered and determined in the trial of the criminal case, and that we would not go behind the record of conviction therein. This case has never been directly overruled, and has been widely cited in other states on this point. The opinions filed in *Keller v. Davis,* 69 Neb. 494; *Michaelson v. Beemer,* 72 Neb. 761, and *In re McMonies,* 75 Neb. 702, somewhat shake the doctrine announced in *Ex parte Fisher,* supra, but they go no further than to hold that, if the proceedings leading up to the detention are absolutely null and void, the prisoner may be released on a writ of habeas corpus. If the indictment or information purports or attempts to state an offense, and the court has jurisdiction to pass upon the sufficiency of those statements, the de-defendant after conviction will not be released in habeas corpus proceedings. As said by Mr. Justice Van Fleet in *Ex parte Williams,* 121 Cal. 328: "While the inquiry on habeas corpus may extend to the question of whether the complaint or information charges an offense known to the law, since this objection goes to the question of jurisdiction, * * * the proceedings may not be made to subserve the office of a demurrer; and if the facts alleged squint at a substantive statement of the offense, no matter how defectively or inartificially they may be stated, or however confused and beclouded they may be rendered through intermingling them with immaterial or unnecessary averments, the writ will not lie." See, also, *Ex parte Harlan,* 1 Okla. 48; *Ex parte Stacey,* 45 Or. 85; *Ex parte Williford,* 50 Tex. Cr. Rep. 417, 100 S. W. 919; *Ex parte Grubbs,* 79 Miss. 358, 30 So. 708; *McLaughlin v. Etchison,* 127 Ind. 474; *Pritchett v. Cox,*

154 Ind. 108; *Ex parte Upson*, 94 Pac. (Cal.) 855; *In re Ruef*, 150 Cal. 665. On direct attack in later proceedings the indictment under consideration in the last-cited case was held invalid in *People v. Schmitz*, 94 Pac. (Cal.) 407; *State v. Shrader*, 73 Neb. 618.

Counsel argue that operating a barber shop is not common labor, therefore that the complaint does not state an offense. Whether the magistrate was governed by the particular statement, or received evidence of labor other than operating a barber shop, we do not know, as none of the evidence introduced upon relator's trial in the police court is included in the record herein; but, if the evidence strictly conformed to the charge that the common labor was that of operating a barber shop, then whether that conduct amounted to engaging in common labor was a matter of law for the magistrate to consider and decide, and his affirmative finding would not be so absolutely erroneous as to render his judgment void. In some instances courts have held that a barber is a workman who performs mere manual labor (*State v. Nesbit*, 8 Kan. App. 104, 54 Pac. 326; *Regina v. Taylor*, 19 Can. L. J. 362); while within the meaning of exemption laws a barber has been held to be a mechanic (*Terry v. McDaniel*, 103 Tenn. 415, 53 S. W. 732). In New York the statute forbade servile laboring or working on Sunday. One Stewart on Sunday personally solicited signatures to a memorial to the legislature praying their interference with slavery, and in consequence a complaint was filed with a justice of the peace charging him with violating that statute "in circulating a memorial to the legislature." Stewart was convicted, and, in an action of trespass brought by him against said justice and the constable who arrested him, it was held that the conviction was not void; that by means of the complaint the justice had jurisdiction to issue the warrant, and by the service thereof he had jurisdiction of Stewart's person, and that, although the defendant might not have been within the prohibition of the statute in circulating the memorial,

whether he was or not was a matter of law which the justice had power to determine, even if his decision were erroneous. *Stewart v. Hawley & Bartholomew,* 21 Wend. (N. Y.) 552.

Complaints charging the commission of misdemeanors are often most defectively worded, and yet the defendant is tried for an offense known to the law, often with but little regard for the statements in the complaint, and is righteously convicted. The legislature, with knowledge of this fact, has provided in section 325 of the criminal code that, should the defendant appeal from such conviction, the prosecutor may substitute a sufficient complaint in the district court, and this may be done, even though the original one did not state an offense against the law. *Bays v. State,* 6 Neb. 167. Ample provision is made for appeals from convictions in misdemeanor cases, and resorts to writs of habeas corpus ought not to be encouraged. In case the defendant did offend against the law, and the complaint did not state facts sufficient to describe that offense, but upon trial he should be found guilty and should appeal, a proper complaint could be filed in the district court, and defendant be compelled to pay for his violation of law; but if he may ignore direct proceedings and seek shelter under a writ of habeas corpus, he may be delivered from the hands of the law, and many prosecutions in inferior courts be rendered unavailing. The judgment of guilty carried with it of necessity the judgment of the magistrate that the complaint charged relator with unlawfully engaging in common labor on Sunday, and that he was not within any of the exceptions of the statute, and that judgment is not so absolutely void as that it may be successfully attacked in this proceeding.

We therefore recommend that the judgment of the district court be affirmed.

EPPERSON, GOOD and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.