[No. 30788.   Department One.   May 26, 1949.]

THE STATE OF WASHINGTON, *Respondent*, v. JOE
GRABINSKI, *Appellant*.[1]

[1]Reported in 206 P. (2d) 1022.

*Velikanje & Velikanje* and *John S. Moore, Jr.*, for appellant.

*Owen Clarke* and *Gordon Hanson*, for respondent.

HILL, J.—This is an appeal from a conviction for violating Rem. Rev. Stat., § 2494 [P.P.C. § 118-223], in that appellant sold uncooked meats and groceries on the first day of the week. That section of our statute is as follows:

"Every person who, on the first day of the week, shall promote any noisy or boisterous sport or amusement, disturbing the peace of the day; or who shall conduct or carry on, or perform or employ any labor about any trade or manufacture, except livery-stables, garages and works of necessity or charity conducted in an orderly manner so as not to interfere with the repose and religious liberty of the community; or who shall open any drinking saloon, or sell, offer or expose for sale, any personal property, shall be guilty of a misdemeanor: Provided, that meals, without intoxicating liquors, may be served on the premises or elsewhere by caterers, and prepared tobacco, milk, fruit, confectionery, newspapers, magazines, medical and surgical appliances may be sold in a quiet and orderly manner. In works of necessity or charity is included whatever is needful during the day for the good order or health or comfort of a community, but keeping open a barber-shop, shaving or cutting hair shall not be deemed a work of necessity or charity, and nothing in this section shall be construed to permit the sale of uncooked meats, groceries, clothing, boots or shoes."

Appellant contends that the act is class legislation and unconstitutional, as violative of amendment 14, § 1, of the constitution of the United States, and Art. I, §§ 3 and 12, of the constitution of the state of Washington.

Appellant concedes that these contentions were decided adversely to him in *Seattle v. Gervasi,* 144 Wash. 429, 258 Pac. 328, but urges that conditions have so changed since the statute was enacted in 1909 and since we last passed upon its constitutionality in the *Gervasi* case in 1927, that a different conclusion should now be reached.

It is pointed out that there is a general and growing disregard for any restrictions on the use that man should make of the Sabbath; that the state game commission, under the authority vested in it by the legislature (Rem. Supp. 1947, § 5922-24), regularly fixes Sunday as the opening of the game fishing season and the hunting season for game birds and deer; that the state horse racing commission, under like authority to determine the place and time of race meets, authorizes horse racing (and, of course, pari-mutuel betting) on Sunday (Rem. Rev. Stat. (Sup.), § 8312-4 [P.P.C. § 634-7]). The argument might well be summarized in Lowell's lines:

> "New occasions teach new duties; Time
>   makes ancient good uncouth;
> They must upward still, and onward,
>   who would keep abreast of Truth."

We must decline to consider this argument as it relates to Sabbath observance. Whether an individual's conduct is a violation of the Fourth Commandment (Exodus 20:8-11; Deuteronomy 5:12-15) must first be determined in the court of his own conscience, and is subject to review by an infinitely higher Court than this. We have neither original nor appellate jurisdiction, and the argument that "Time makes ancient good uncouth" should be reserved for the Court that ultimately passes upon the issue of violations of the Commandments.

The statute which the appellant was convicted of violating makes no reference to the Sabbath, but prohibits certain activities on the first day of the week; it has been upheld by this court, not as an implementation of the Fourth Commandment, but as a proper exercise of the police power. As was said in *State ex rel. Walker v. Judge,* 39 La. Ann.

132, 139, 1 So. 437 (quoted in *Seattle v. Gervasi, supra,* p. 433):

"There exists a remarkable *consensus* of authority that the establishment of a compulsory day of rest in each week is a legitimate exercise of the police power."

Such legislation as that under consideration should be regarded as day-of-rest legislation rather than as Sabbath or Sunday closing laws. It is clear from a reading of the opinion in the *Gervasi* case that, had the legislature selected the second, the third, or any other day of the week, the decision would have been the same.

In 1909, when Rem. Rev. Stat., § 2494, was enacted, the first day of the week naturally was selected as the compulsory day of rest, because for centuries trade, commerce, and industry had generally ceased on that day. That the reason for cessation was originally religious is undisputed; it was the day adopted by the great majority as their Sabbath and for a fulfillment of the Fourth Commandment. Secular law recognized, from a social standpoint, the desirability of a day of rest in seven, and quite naturally selected the day already established by the mores of the people.

The legislature but recently authorized the closing of banks on Saturday (Rem. Supp. 1947, § 3292a) and the closing of public offices on Saturday afternoon (Rem. Supp. 1941, § 9963-1 [P.P.C. § 633-7]), and it would seem that the trend is toward the establishment of two days of rest each week. The desirability of having the same days of rest for everyone, so far as possible and convenient, is made obvious when, in Olympia, for example, one tries to get a haircut on Monday or a tooth filled on Thursday, those being the days of rest adopted by the tonsorial artists and the dental profession in that city, in addition to the one prescribed by custom and Rem. Rev. Stat., § 2494. If it is ultimately decided that two days of rest each week are desirable, it would be natural for the legislature to select the last day of the week for the additional day, because it is a growing custom so to do, and because that, likewise,

is a day which a considerable number observe as the Sabbath.

■ However, appellant argues that Rem. Rev. Stat., § 2494, is unconstitutional because it excepts tobacco, milk, fruit, confectionery, newspapers, magazines, and medical and surgical supplies from the general prohibition of the sale of personal property on the first day of the week, and is therefore discriminatory. As long as the legislature limits its exceptions to specific commodities, such enactments are almost universally upheld. No agreement is to be expected between different individuals as to what items should be sold on the day of rest, and it is generally held that the legislature has the right to designate the articles which can be legally sold on that day. *Seattle v. Gervasi, supra; State v. Diamond,* 56 N. D. 854, 219 N. W. 831; *State ex rel. Hoffman v. Justus,* 91 Minn. 447, 98 N. W. 325, 64 L. R. A. 510, 103 Am. St. 521, 1 Ann. Cas. 91. Accord: *Ness v. Supervisors of Elections of Baltimore,* 162 Md. 529, 160 Atl. 8; *Ex parte Johnson,* 77 Okla. Crim. 360, 141 P. (2d) 599. See, also, annotations, 46 A. L. R. 290, 119 A. L. R. 752.

There is no restriction as to who may sell the designated articles, and no burden is imposed upon any person which is not imposed upon all persons in the same class. In the *Gervasi* case, *supra,* we quoted an excellent statement from *State v. Dolan,* 13 Idaho 693, 715, 92 Pac. 995, 14 L. R. A. (N.S.) 1259:

"What reason the legislature had for making the particular classification they did is a matter upon which no two minds might agree. To one person, it might seem unreasonable to permit cigars to be sold on Sunday and to prohibit the sale of tea, coffee and other articles, yet the legislature has deemed it wise to make this classification. Inasmuch as the classification extends the same privileges to everybody, and there is no discrimination, and no burden imposed on any person of a class which is not imposed upon all of the same class, this court cannot revise the judgment of the legislature as to the wisdom of such classification."

Appellant cites *Broadbent v. Gibson,* 105 Utah 53, 140 P. (2d) 939, and commends it to our consideration. As we

read the *Broadbent* case, it specifically approves a statute such as ours, where there is a general prohibition of all sales on a designated day, with certain articles specifically excepted, but holds unconstitutional a statute in which certain types of stores are permitted to remain·open and to sell the same articles that others are prohibited from selling. For example, under the Utah statute, a grocery store handling tobacco and candy could not open on Sunday for the sale of those articles, but must remain closed; a tobacco store could sell tobacco only, and a confectionery store could sell confections only; whereas a bowling alley, a hotel, or a pharmacy might sell both. The discrimination in such legislation is obvious. Under the Washington statute, on the other hand, large department and grocery stores might open for the sale of tobacco and candies, if they so desired; although for economic and perhaps other reasons they do not avail themselves of that privilege, there is, nevertheless, no discrimination against them.

We are content to adhere to our former holdings that Rem. Rev. Stat., § 2494, standing alone, is not unconstitutional.

Appellant raises two other issues, which have not heretofore been passed upon by this court, when he urges that § 2494, when read in conjunction with § 2496, is unconstitutional as a violation of religious freedom and as being discriminatory on the basis of religious beliefs.

We find no violation of Art. I, § 11 (as amended), of our state constitution, relative to religious freedom. No one is restricted in his religious beliefs or practices; he may observe any day or every day as a holy day if he so desires. The statute merely restricts his activities on the first day of the week, which the legislature has selected as a day of rest. See *In re Caldwell*, 82 Neb. 544, 118 N. W. 133.

Appellant's other contention, that the two statutes construed together result in discrimination on the basis of religious beliefs, warrants serious consideration.

Without repeating § 2494 in its entirety, we point out that it penalizes persons who do any of four things on the

first day of the week: (1) promote any noisy or boisterous sport or amusement; (2) conduct, carry on, perform, or employ any labor about any trade or manufacture (with certain exceptions); (3) open any drinking saloon; and (4) sell, offer, or expose for sale any personal property (with certain exceptions). Section 2496 reads as follows:

"It shall be a sufficient defense to a prosecution for performing work or labor on the first day of the week that the defendant uniformly keeps another day of the week as holy time and that the act complained of was done in such manner as [will] not disturb others in the observance of the Sabbath."

There is a line of cases supporting the appellant's position and holding that a determination as to whether one who has performed labor on the first day of the week has been guilty of a misdemeanor cannot depend upon his religious beliefs, that the consequence of such labor would then be determined not by the character of the act but by the opinions of the party performing it, and that it would be a denial of the equal protection of the laws guaranteed by amendment 14, § 1, of the constitution of the United States and a giving of an immunity to citizens of a certain class, in violation of Art. III, § 12, of our state constitution. *Kislingbury v. Plainfield*, 10 N. J. Misc. 798, 160 Atl. 654; *Shreveport v. Levy*, 26 La. Ann. 671. However, the trial judge, in his able and scholarly memorandum opinion, quoted at length from two cases upholding enactments such as Rem. Rev. Stat., § 2496. In one of these, *Johns v. State*, 78 Ind. 332, 41 Am. Rep. 577, it was said:

"It is asserted that an objection against this statute is now urged, which has not been presented in any of the numerous cases decided by this court. This objection is, that the proviso which reads thus, 'but nothing herein contained shall be construed to affect such as conscientiously observe the seventh day of the week as the Sabbath,' brings the section under examination into conflict with section 23 of the Bill of Rights. This objection can not prevail. The constitutional provision referred to reads thus: 'The General Assembly shall not grant to any citizen, or to any class of citizens, privileges or immunities which, upon

the same terms, shall not belong equally to all citizens.' The statute under immediate mention does not grant immunities to one class of citizens which, upon the same terms, shall not belong to all. The terms upon which the immunity may be enjoyed are granted to all, and denied to none. All citizens accepting these terms may claim the immunity. All who observe the seventh day of the week are entitled to the immunity provided. There is nothing restricting any citizen from enjoying it upon the same terms with all his fellow citizens.

"The framers of the statute meant to leave it to the consciences and judgments of the citizens to choose between the first and the seventh day of the week. One or the other of these days they must refrain from common labor. Which it shall be is to be determined by their own consciences. It was not the purpose of the law-makers to compel any class of conscientious persons to abstain from labor upon two days in every week. Without the proviso which is said to break down the law, a large number of citizens would be compelled to lose two days of labor. One day, because of their conscientious convictions of religious duty, and one by the command of the municipal law. We know that there are sects of Christians who conscientiously believe the seventh day to be the divinely ordained Sabbath. We know, too, that there is a great people, who, for many centuries, and through relentless persecution and terrible trials, have clung with unswerving fidelity to the faith of their fathers that the seventh day is the true Sabbath. If the proviso were wrenched from the statute, these classes of citizens would be compelled, in obedience to their religious convictions, to rest from labor on the seventh day, and, by the law, also compelled to refrain from common labor on the first day of the week. A leading and controlling element of our system of government is, that there shall be absolute freedom in all matters of religious belief. The statute here under examination is framed in harmony with this all pervading and controlling principle. It was meant, not to secure special privilege to any class, but to afford free opportunity to all to observe that day which, in their conscientious judgments, they believe to be that upon which good men should cease from labor."

In *In re Caldwell, supra,* the court did not give the phraseology of the statute under consideration, but an examination of the Nebraska statute shows it to have been as follows:

"And if any person of the age of fourteen years or upward shall be found on the first day of the week, commonly called Sunday, at common labor (work of necessity and charity only excepted), he or she shall be fined . . . ; PROVIDED, Nothing herein contained in relation to common labor on said first day of the week, commonly called Sunday, shall be construed to extend to those who conscientiously do observe the seventh day of the week as the Sabbath." Cobbey's Compiled Statutes of Nebraska (ed. 1907), § 2338.

The Nebraska court there said:

"Nor can we subscribe to the claim of counsel that, as the votaries of the Koran observe Friday as a day of worship, they are improperly discriminated against in the operation of the law, because the Adventist and the Jew are permitted to pursue their avocations on the first day of the week if they observe the seventh day thereof. We doubt very much whether there were any disciples of Mahomet in Nebraska in 1873, and those who have emigrated to Nebraska since that day came here with full knowledge of the Sunday statute, and their appearance in our commonwealth will hardly render unconstitutional and void an act of the legislature that theretofore was valid. Furthermore, there is nothing in the statute that discriminates between religious sects. Any resident whose employment falls within the inhibition of the statute may choose between the first and the seventh day of the week wherein to refrain from labor, and if he observes the mandate of the law on either of those days, whether he be Gentile, Jew, Mohammedan, Pagan or Agnostic, he is safe from prosecution, not because of the religious significance of the day in his eyes, but because he has obeyed the command of the secular law to abstain from labor upon one of the two days named. [Citing cases.] Unless the individual ceases from labor, he does not observe the day within the meaning of the statute, and if he does upon either of said days refrain from labor he 'observes' that day. [Citing cases.] We therefore hold against relator as to the validity of the statute under which he was prosecuted."

It is to be observed that, in the *Johns* and *Caldwell* cases, quoted above, a choice of the first or the seventh day of the week was permitted by the statutes. Rem. Rev. Stat., § 2496, is broader than the statutes construed in those cases,

because it permits the substitution of any other day of the week for the first day thereof. Even the votaries of the Koran, referred to in the *Caldwell* case, cannot complain of discrimination under the provisions of our statute. See, also, *People v. Bellett,* 99 Mich. 151, 57 N. W. 1094, 41 Am. St. 589, 22 L. R. A. 696; *Cincinnati v. Rice,* 15 Ohio 225; *Canton v. Nist,* 9 Ohio St. 439.

It is also to be noted that, while in practically all the other statutes we have examined, the exemption granted to those who observe another day of rest is a proviso added to the prohibitory section of the statute, it is an entirely separate section in the Washington statute.

■ Appellant is charged with the sale of personal property on the first day of the week in violation of the law, not with performing labor thereon; hence § 2496 has no applicability and his observance of another day cannot be urged as a defense.

■ Unless a person's rights are directly involved, courts will postpone inquiry into constitutional questions which are separable from the issue then before the court until they are met upon a proposition directly at issue, unless the unconstitutional feature, if it exists, is of such character as to render the entire act void. *State v. Bowen & Co.,* 86 Wash. 23, 149 Pac. 390, Ann. Cas. 1917 B, 625; *State v. Charrier,* 151 Wash. 654, 276 Pac. 878; *Gengler v. King County,* 12 Wn. (2d) 227, 121 P. (2d) 346; *Batchelor v. Madison Park Corp.,* 25 Wn. (2d) 907, 172 P. (2d) 268. We will, therefore, reserve the question of the constitutionality of Rem. Rev. Stat., § 2496, as we doubt that the appellant is entitled to raise the question, and that section is, in any event, separate and severable from § 2494.

It is a well-recognized rule of constitutional law that, where the unconstitutional portion of an act is severable from the rest, the portion which is constitutional may stand, and that which is unconstitutional may be stricken out and rejected. 11 Am. Jur. 834, Constitutional Law, § 152; *State v. Bowen & Co., supra.*

■ Appellant complains that he was not allowed to present evidence of "community necessity" for the sale of

groceries and uncooked meats on Sunday. We have previously pointed out that the statute enumerates four types of activities which are made misdemeanors; it is only the second type (conducting, carrying on, performing, or employing any labor about any trade or manufacture) as to which there is an exception of

" . . . works of necessity or charity conducted in an orderly manner so as not to interfere with the repose and religious liberty of the community . . . "

Necessity is not made a defense for the sale of personal property on the first day of the week. If it were a defense, the evidence offered and refused would at best raise an issue of convenience, not necessity.

▮ Appellant complains because he was not permitted to introduce evidence of widespread violation of Rem. Rev. Stat., § 2494, to establish nonuse as a factor in repeal by implication. The evidence and the argument advanced should be presented to the legislature. We will not here elaborate on the generally recognized distinction between the legislative and the judicial functions. This court does not intentionally repeal the acts of the legislature or give its approval to a claim of repeal of a legislative enactment by implication based upon nonuser and obsolescence. We find no repugnant or irreconcilable statutes.

Our views on the arguments of changed conditions, obsolescence, and un- and non-enforcibility were well expressed by the supreme court of Idaho in *State v. Cranston,* 59 Idaho 561, 85 P. (2d) 682. We resist the temptation to quote two or three pages of that opinion, and confine ourselves to the following excerpts:

"In other words, for a period of practically 32 years, during which time constitutions, laws, customs, practices and even morals have undergone the greatest change ever experienced in the same length of time in the history of America, no repeal nor substantial amendment, other than as above indicated, has occurred to change the act now under attack. . . .

"Now after the lapse of nearly 32 years we are asked to reopen the question and overrule the unanimous opinion

of our predecessors, partly if not chiefly, on the grounds as stated in appellant's brief: 'That times and conditions have changed,' since that decision was announced. That argument might (or might not) furnish a persuasive reason for the legislature amending or repealing the act but it affords no reason whatever for holding an act unconstitutional which was once approved on judicial review and has stood unchallenged for nearly a third of a century since such decision was announced. . . .

"The further contention of appellants that, 'It is common knowledge that with respect to many phases of the Sunday Closing Law, it has absolutely been ignored' (if true, which we doubt) has no place for consideration in the courts in passing on the validity of the statute. That is purely a public governmental question to be dealt with by the people and the legislature. We may construe but have no power or authority to amend or repeal statutes. Nor does the change of public opinion (if such be the case) with reference to a law have any proper place in the consideration by the courts of the power of the legislature to enact the law or the duty of the courts and administrative officers to enforce it. . . .

"If the Sunday Closing Law is unwise, antiquated, unenforced or unenforceable (all nonjudicial questions) the legislature is the place for those to go who are dissatisfied and there disclose their grievances. . . . The constitutionality of the act is a closed issue in this court."

Evidence of appellant's recent acquittal on an identical charge, presented for the purpose of showing obsolescence of the law as a factor in a repeal by implication, was likewise properly rejected by the trial court.

■ We quite agree with the trial court that it is not necessary for the state to prove that a sale made on Sunday was made on the first day of the week.

We find no error in the record and no merit in the claim that Rem. Rev. Stat., § 2494, is unconstitutional or that it has been repealed by implication based on nonuser and obsolescence and repugnant legislation; therefore the judgment is affirmed.

JEFFERS, C. J., BEALS, and MALLERY, JJ., concur.

STEINERT, J., concurs in the result.