[No. 44741. En Banc. October 20, 1977.]

CRANE TOWING, INC., ET AL, *Respondents*, v. SLADE GORTON, *as Attorney General*, ET AL, *Appellants*.

*Slade Gorton, Attorney General,* and *Marianne McGettigan, Assistant,* for appellants.

*Langlie & Praeger,* by *Arthur S. Langlie,* for respondents.

HAMILTON, J.—This appeal concerns the constitutionality of Laws of 1975, 1st Ex. Sess., ch. 281, p. 1208 (RCW 46.52.118–.1198), an act relating to the towing or removing of motor vehicles from private property.

Chapter 281 was to become effective on September 8, 1975. Prior to its effective date, respondents, Crane Towing, Inc., and Washington Tow Truck Association, Inc., brought this action seeking a judgment declaring chapter 281 unconstitutional. A preliminary injunction was entered restraining and enjoining appellants, the Attorney General and the State of Washington, from enforcing or implementing chapter 281 during the pendency of the trial. On November 24, 1975, the trial court entered an order granting respondents' motion for summary judgment finding chapter 281 unconstitutional in its entirety. Appellants

have appealed from this order claiming that chapter 281 is constitutional under the police powers of the State. Respondents have cross–appealed from the trial court's denial of their motion for attorney fees. We find chapter 281 constitutional, and accordingly reverse the trial court's order granting respondents' motion for summary judgment. We affirm the trial court's denial of respondents' motion for attorney fees.

Chapter 281 is a comprehensive, regulatory scheme governing private property owners and towing firms who tow or remove motor vehicles from private property. The act requires private property owners to post a sign on or near their property, which informs vehicle operators that unauthorized vehicles will be removed. The sign must also contain sufficient information to assist the vehicle operator or owner in the prompt recovery of his vehicle once it has been removed. RCW 46.52.1192.[1] If the property owner does not post such a sign and has a vehicle removed from his property, the owner or operator of the removed vehicle is authorized to bring an action seeking recovery of his consequential and incidental damages arising from the interference with his ownership or use of the vehicle. RCW 46.52.1198.[2]

---

[1] "No person shall have the right to tow, remove, impound or otherwise disturb any motor vehicle other than an abandoned vehicle as defined in RCW 46.52.102, which may be parked, stalled or otherwise left on private property, other than family residential property, owned or controlled by such person, unless there is posted on or near the property in a clearly conspicuous location a sign or notice in compliance with rules and regulations of the director of the department of motor vehicles providing for, without limitation, specifications for signs and posting thereof by persons intending to have unauthorized vehicles removed from property other than family residential property. Such regulations shall provide for notification to any person of the intent of the property holder to remove any unauthorized vehicles and sufficient information to assist in the prompt recovery of any vehicle removed. Such regulations shall require as a minimum that the language on any such sign provide:

"(1) Notice that unauthorized vehicles will be removed;

"(2) The name, telephone number and location of the towing firm authorized to remove vehicles." RCW 46.52.1192.

[2] "Any person acting to tow, remove or otherwise disturb any motor vehicle parked, stalled or otherwise left on privately owned or controlled property, and

Overriding these sections regulating private property owners are two important exceptions to the requirement that a sign be posted on or near the property.

First, the requirement of posting a sign does not apply to persons who possess or control "family residential property". RCW 46.52.1192; *see* RCW 46.52.119.[3] This means an owner or occupier of "family residential property" is not subject to a suit by the owner or operator of the removed vehicle even when no sign is posted.

Second, any person who possesses or controls real property may have an "abandoned vehicle" towed or removed from his property without posting a sign and without the possible sanction of an action being brought against him by the owner or operator of the "abandoned vehicle". RCW 46.52.118.[4] An "abandoned vehicle" is defined as:

[A]ny vehicle left . . . upon the property of another without the consent of the owner of such property for a period of twenty–four hours, or longer except that a vehicle shall not be considered abandoned if its owner or operator is unable to remove it from the place where it is located and so notifies law enforcement officials and requests assistance.

RCW 46.52.102.

---

any person owning or controlling such private property, or either of them, shall be liable to the owner, operator or driver of a motor vehicle, or each of them, for consequential and incidental damages arising from any interference with the ownership or use of such motor vehicle which does not comply with the requirements of RCW 46.52.1192, 46.52.1194, and 46.52.1196." RCW 46.52.1198.

[3]"Whenever any owner or person having possession or control of family residential property finds a vehicle other than an abandoned vehicle as defined in RCW 46.52.102 standing upon such property without his consent, he is authorized to have such vehicle removed from such property and stored or held for its owner." RCW 46.52.119.

[4]"Any person having possession or control of real property who finds an abandoned vehicle or abandoned vehicle hulk as defined in RCW 46.52.102 standing upon that property is authorized to have such vehicle or hulk removed by a person properly registered pursuant to RCW 46.52.108. Such vehicle shall be disposed of in accordance with the procedure prescribed in RCW 46.52.111 and 46.52.112." RCW 46.52.118.

This second exception greatly ameliorates the requirement that a person who does not possess or control "family residential property" must post a sign before removing vehicles from his property. If such a person does not wish to post a sign, he is not permanently barred from having the unauthorized vehicle removed, since that vehicle becomes an abandoned vehicle after 24 hours and subject to immediate removal without restriction.

Chapter 281 also imposes certain requirements on towing firms which remove vehicles pursuant to RCW 46.52.119 or RCW 46.52.1192. If the towing firm assesses a fee according to the number of miles a vehicle is towed, the towing firm can recover no more than the fees that would accrue for towing to the nearest storage location of any towing firm. The towing firm must also maintain personnel able and authorized to release vehicles on a 24–hour basis and must give notice of the removal to certain law enforcement agencies and to the registered owner of the vehicle. *See* RCW 46.52.1194.[5]

---

[5] "(1) Any towing firm removing vehicles from private property pursuant to RCW 46.52.119 or 46.52.1192 shall:

"(a) File with the department a detailed schedule of all fees charged incident to the removal and storage of vehicles pursuant to RCW 46.52.119 or 46.52.1192;

"(b) Post a copy of the schedule of fees on file with the department in a prominent place at the business location where vehicles are released from storage;

"(c) Maintain personnel able and authorized to release any vehicle to its owner on a twenty–four hour basis;

"(d) After removing a vehicle from private property pursuant to RCW 46.52-.119 or 46.52.1192, report the fact of removal together with the license number, vehicle identification number, make, year and place of impoundment to the law enforcement agency with jurisdiction over the place of impoundment, which agency shall maintain a log of such reports: *Provided,* That the reporting required in this subsection shall include an immediate radio or telephone call to, and a written notification, within twenty–four hours, to such local law enforcement agency;

"(e) If any vehicle removed pursuant to RCW 46.52.119 or 46.52.1192 remains unclaimed after twenty–four hours, send to the registered owner of the vehicle by the end of the next business day a notice by certified mail, return receipt requested, advising that person of the name, location and twenty–four hour telephone number of the person, tow truck operator, or operator of any storage facility who is empowered or authorized to return custody of any such towed, removed, or impounded motor vehicle. The notification shall also contain an estimate of the costs of towing, storage, or other services rendered during the course

In releasing vehicles, the towing firm is required to accept presentation of commercially reasonable tender sufficient to cover the costs of towing, storage, and other services. *Commercially reasonable tender* is defined in the act to include personal checks drawn on local banks with proper identification, and valid and appropriate credit cards. RCW 46.52.1196.[6] In addition, if the owner or operator of the removed vehicle can provide adequate proof of

of removing, impounding, or storing any such motor vehicle. For the purpose of sending such notice, the law enforcement agency to which the report was made shall provide the name and address of the registered owner, as it appears on the records of the department, to the towing firm removing a vehicle under the provisions of RCW 46.52.118 through 46.52.1198: *Provided,* That in the event such certified letter has been refused or returned to sender unclaimed the notification to the law enforcement agency as provided in subsection (1)(d) of this section shall constitute actual notice to the registered and legal owner: *Provided further,* That the effect of other laws notwithstanding, the costs of towing, storage or other services rendered during the course of removing, impounding or storing any such motor vehicle shall not constitute a lien upon the legal ownership of such motor vehicle until forty–eight hours after the notice as provided in this subsection has been received by the local law enforcement agency or owner of the vehicle, at which time the lien may be enforced as otherwise provided by law for the enforcement of towing or storage liens or liens generally: *And provided further,* That if the towing firm assesses a fee according to the miles a vehicle is towed, the lien shall be, and the towing firm shall attempt to recover, no more than the fees that would accrue for towing to the nearest storage location of any towing firm.

"(2) A failure to comply with the provisions of this section in regard to any vehicle waives the lien on that vehicle, constitutes a bar to recovery of the charges accrued on that vehicle, and is grounds for the suspension or revocation of the registration of any towing firm registered under RCW 46.52.108 to dispose of the abandoned vehicle: *Provided,* That no storage charges shall accrue in any event until written notice as provided in this section shall have been received by the local law enforcement agency or owner of the vehicle." RCW 46.52.1194.

[6]"Any towing firm removing vehicles from private property pursuant to RCW 46.52.119 or 46.52.1192 shall release such vehicle to the owner, operator, driver, or authorized designee thereof upon the presentation to any person having custody of such vehicle of commercially reasonable tender sufficient to cover the costs of towing, storage or other services rendered during the course of towing, removing, impounding or storing any such motor vehicle, such commercially reasonable tender to include, without limitation, cash, personal checks drawn on local banks with proper identification, and valid and appropriate credit cards: *Provided however,* That any person who stops payment on a personal check with intent to defraud a towing firm which has provided a service pursuant to this section, or in any other manner defrauds the towing firm in connection with services rendered pursuant to this section shall be liable for damages in the amount of twice the

his financial responsibility, employment and residence in the community, the vehicle must be released without payment with the understanding that the towing firm's costs will be paid within 30 days or shall be recoverable through an action at law. RCW 46.52.1196. If the towing firm does not comply with the requirements of RCW 46.52.1194 or .1196, the owner or operator of the removed vehicle may sue the towing firm for recovery of his consequential and incidental damages arising from the interference with his ownership or use of the vehicle. RCW 46.52.1198.

 Appellants claim chapter 281 is constitutional as a proper exercise of the State's police power. Our role in testing the constitutionality of an act under the police power of the State was set forth in *State v. Conifer Enterprises, Inc.*, 82 Wn.2d 94, 96–97, 508 P.2d 149 (1973), and bears repeating here.

> Two steps are involved in measuring the constitutionality of a legislative enactment against the permissible bounds of the police power. First, does it tend to promote the health, peace, morals, education, good order and welfare of the people? More specifically, does it tend to correct some evil or promote some interest of the state? *Shea v. Olson*, 185 Wash. 143, 53 P.2d 615 (1936); *Clark v. Dwyer*, 56 Wn.2d 425, 353 P.2d 941 (1960), *cert. denied*, 364 U.S. 932 (1961). If the answer is yes, the wisdom, necessity and policy of the law are solely within the jurisdiction of the legislature. *State v. Bowen & Co.*, 86 Wash. 23, 149 P. 330 (1915); *Reesman v. State*, 74 Wn.2d 646, 445 P.2d 1004 (1968).
>
> The second inquiry, more narrow, but equally important, is whether the particular statute under scrutiny bears a reasonable and substantial relation to accomplishing the purpose established in step one. *Markham Advertising Co. v. State*, 73 Wn.2d 405, 439 P.2d 248

---

towing and storage fees, plus costs and reasonable attorney's fees: *Provided further,* That every towing firm providing service pursuant to this section shall post a true copy of this section in a conspicuous place upon its business premises: *Provided further,* That if the owner, operator, driver or authorized designee thereof, shall provide adequate proof of his financial responsibility, employment and residence in the community to any person having custody of any towed, removed, impounded or stored motor vehicle, then the motor vehicle shall be released without payment, with the understanding that such costs shall be paid within thirty days, or shall be recoverable through an action by law." RCW 46.52.1196.

(1968); *Lenci v. Seattle,* 63 Wn.2d 664, 388 P.2d 926 (1964).

These tests cannot be applied in a vacuum. The state interest to be promoted or the evil to be corrected, and the relationship of the statute to this purpose, must be sought out. However, in a state where legislative intent is seldom recorded, and where only infrequently does a legislative act carry a recital of facts upon which the legislature is acting, the court necessarily has had to engage in certain presumptions.

The basic rule is that if the court can reasonably conceive of a state of facts to exist which justify the legislation, those facts will be presumed to exist. Further, it will be presumed that the statute was passed with reference to those facts. *State v. Laitinen,* 77 Wn.2d 130, 459 P.2d 789 (1969); *Markham Advertising Co. v. State, supra; Shea v. Olson, supra..*

In addition to that presumption, the court is guided by two other rules. First, the burden of establishing the invalidity rests heavily upon the party challenging constitutionality. Second, every presumption will be in favor of constitutionality. *Lenci v. Seattle, supra.*

These rules are more than mere rules of judicial convenience. They mark the line of demarcation between legislative and judicial functions.

*Lenci v. Seattle, supra* at 668.

■ Applying these tests to the legislation here, we think a set of facts conceivably exists which support a finding that chapter 281 tends to promote the safety and welfare of the people. Modern society's dependence on the automobile as the primary mode of travel is well known in this time of national discussion on energy conservation. Traveling hundreds of miles from one's home and back in 1 day, whether for business or pleasure, is surely not an uncommon experience. It cannot be doubted that the unexpected loss of the use of one's vehicle directly affects the safety and welfare of vehicle operators and owners. A person may be stranded hundreds of miles from home with no alternative mode of return travel and with no place to stay until the vehicle can be recovered. Similarly, the loss of the use of one's vehicle may substantially affect one's employment. Legislation

which tends to assist members of the public from involuntarily losing the use of their vehicles and which tends to expedite recovery of their vehicles once they have been removed fairly and clearly promotes the safety and welfare of the public.

Further, chapter 281 bears a reasonable and substantial relation to accomplishing this objective of assisting vehicle operators and owners. Again, it must be kept in mind that a broad discretion is vested in the legislature to determine what the public demands and what measures are necessary to protect the public interest. *Reesman v. State,* 74 Wn.2d 646, 650, 445 P.2d 1004 (1968). Requiring property owners to post a sign warning vehicle operators that unauthorized vehicles will be removed is reasonably related to assisting members of the public from involuntarily parting with their vehicles if they should park their vehicles where they are not supposed to park them. Although respondents seek to characterize all trespassing vehicle operators as intentional wrongdoers, this may not always be true. A vehicle operator may assume he has permission to park on private property, either because of his prior conduct or because he sees other private vehicles parked in the parking lot of a business which has closed for the night. Thus, he may believe the private property owner has no objections to others using his parking lot after business hours. If a private property owner does not wish to have others use his property for parking, he need only post a sign. Similarly, because the sign must contain information regarding where the vehicle will be towed, this requirement also assists the operator or owner in retrieving his vehicle once it has been removed.

The requirements that the towing firm maintain personnel on a 24–hour basis who are authorized to release vehicles and that the towing firm accept commercially reasonable tender are also designed to facilitate retrieval of vehicles which have been removed. Again, these requirements undoubtedly bear a reasonable relation to the objective of rejoining the owner or operator with his vehicle once they have become separated.

Respondents argue that RCW 46.52.1198 must be held unconstitutional as an improper exercise of the police power because it is not reasonably and substantially related to the purpose of insuring compliance with the other sections of chapter 281. Respondents interpret RCW 46.52-.1198 as allowing the owner or operator of a removed vehicle to sue the towing firm if the property owner does not comply with chapter 281 and also as allowing the owner or operator to sue the property owner if the towing firm does not comply with the chapter. In other words, respondents interpret RCW 46.52.1198 as authorizing the owner or operator of the removed vehicle to sue either the towing firm or the property owner regardless of fault. Although appellants obviously do not believe respondents' interpretation of RCW 46.52.1198 renders that section unconstitutional, appellants apparently agree with respondents' interpretation of that section.

 Clearly, RCW 46.52.1198 was enacted by the legislature to insure compliance with chapter 281 by towing firms and property owners. If we were to interpret RCW 46.52.1198 as allowing liability without fault, we would agree with respondents that that section would not be reasonably and substantially related to the objective of insuring compliance with the other sections of chapter 281, and thus would not be a proper exercise of the police power. However, RCW 46.52.1198 can also be interpreted as only permitting an action against the party whose interference with the use or ownership of the vehicle was not in compliance with chapter 281. RCW 46.52.1198 authorizes owners or operators of the removed vehicle to sue "for consequential and incidental damages *arising from* any interference . . . which does not comply with the requirements of RCW 46.52.1192, 46.52.1194, and 46.52.1196." (Italics ours.) The words "arising from" are synonymous with the words "resulting from". *See Roget's Int'l Thesaurus* 72 (3d ed. 1962). Thus, RCW 46.52.1198 requires some causal connection between the damages suffered and the interference which does not comply with the other sections of chapter

281. Because RCW 46.52.1198 is subject to two interpretations, one constitutional and the other unconstitutional, we presume the legislature intended a meaning consistent with the constitutionality of its enactment. *Treffry v. Taylor*, 67 Wn.2d 487, 408 P.2d 269 (1965); *Martin v. Aleinikoff*, 63 Wn.2d 842, 389 P.2d 422 (1964).

■ Although we find that chapter 281 is a proper exercise of the State's police power, our inquiry cannot end here for if the act violates any specific constitutional rights guaranteed respondents, the act cannot stand. *Peterson v. Hagan*, 56 Wn.2d 48, 351 P.2d 127 (1960); *State ex rel. Livingston v. Ayer*, 23 Wn.2d 578, 161 P.2d 429 (1945); *Shea v. Olson*, 185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998 (1936).

■ Initially, we are confronted with respondents' arguments that chapter 281 infringes upon certain constitutional rights of private property owners.[7] Respondents did not allege in their complaint nor did they introduce any evidence at trial that they are private property owners who would suffer from the requirements of RCW 46.52.119 and .1192. It has long been the rule in Washington that a plaintiff seeking a judgment declaring a statute unconstitutional must show that enforcement of the statute will directly affect him. *DeGrief v. Seattle*, 50 Wn.2d 1, 13, 297 P.2d 940 (1956); *DeCano v. State*, 7 Wn.2d 613, 110 P.2d 627 (1941). The rationale for this rule is quite simple. If a plaintiff is not directly affected by the enforcement of a statute, the

---

[7]Respondents argued that requiring property owners to post a sign before being authorized to request the removal of vehicles on their property, *see* RCW 46.52.1192, constitutes a taking of property without due process of law and a taking of property for private use without just compensation in violation of U.S. Const. amend. 5; Const. art. 1, § 3; and Const. art. 1, § 16 (amendment 9). Respondents also argued that the phrase "family residential property" found in RCW 46.52.119 and .1192 violates a private property owner's right to due process on grounds of vagueness. Neither of these sections affect towing firms since RCW 46.52.119 authorizes owners or occupiers of "family residential property" to have all vehicles removed from their property, and RCW 46.52.1192 prohibits owners or occupiers of property other than "family residential property" from towing vehicles other than abandoned vehicles unless a sign is posted containing certain information.

declaratory judgment action becomes, in effect, an advisory opinion because of the lack of the necessary adversarial atmosphere. Respondents attempted to circumvent this deficiency by bringing their action on behalf of the people of the State of Washington. Simply stating the action is brought on behalf of all people of the State of Washington does not produce that element of conflict necessary to elevate the decision from being merely an advisory opinion on the constitutional rights of private property owners. *See, e.g., State v. Grabinski,* 33 Wn.2d 603, 612, 206 P.2d 1022 (1949). A plaintiff whose constitutional rights as a private property owner are allegedly infringed upon must be a named party to the action before these possible infringements can be reviewed.

Although respondents lack standing to raise the possible violations of constitutional rights of private property own- ers, the trial court also found chapter 281 violates several of respondents' constitutional rights as owners and operators of towing firms, which we will now review.

██ Respondents first argue that RCW 46.52-.1194(1)(e), which limits the fee a towing firm may collect if the towing firm assesses a fee according to the number of miles a vehicle is towed, is unconstitutional as a deprivation of property without due process of law. It is difficult to comprehend how respondents are deprived of any property by this limitation. RCW 46.52.1194(1)(e) does not require towing firms to assess their fees according to the number of miles a vehicle is towed nor is there any limitation on the amount per mile a towing firm may charge. Thus, there is no deprivation of property.

Respondents also assert that RCW 46.52.1194(1)(e) impairs existing contracts which towing firms have entered into with private property owners in violation of U.S. Const. art. 1, § 10 and Const. art. 1, § 23. This contention must fail for two reasons. First, respondents did not place into evidence any contracts which this section supposedly impairs. Thus, any determination on this argument necessarily requires us to speculate as to whether RCW

46.52.1194(1)(e) in fact impairs any contract rights. Second, and more importantly, it is well established that parties cannot complain of an impairment of their contract rights when this impairment comes about through the State acting within its police power for the health, welfare, and good of the general public. It is presumed that parties contract with knowledge that reservation of essential attributes of sovereign power is written into all contracts as a postulate of the legal order. *Veix v. Sixth Ward Bldg. & Loan Ass'n,* 310 U.S. 32, 38–39, 84 L. Ed. 1061, 60 S. Ct. 792 (1940); *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 539, 520 P.2d 162 (1974).

Respondents next argue that RCW 46.52.1196, which requires towing firms to accept commercially reasonable tender and in some instances release a vehicle without payment so long as it is understood that payment will be forthcoming within 30 days, denies them equal protection of the laws.[8] The guaranty of equal protection of the laws and the prohibition against special privileges and immunities require that class legislation apply alike to all persons within a class and that reasonable grounds exist for making a distinction between those within and those without a specified class. *Haddenham v. State,* 87 Wn.2d 145, 550 P.2d 9 (1976); *Seattle v. See,* 67 Wn.2d 475, 408 P.2d 262 (1965), *rev'd on other grounds,* 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737 (1967).

Although it is probably safe to assume that most businesses do accept commercial tender other than cash and that many extend credit for periods of 30 days or longer, it would appear that towing firms are the only businesses singled out by the legislature that are required to do so. The question then becomes whether there is a reasonable basis for requiring towing firms to accept commercially reasonable tender and extend credit.

We take notice of the fact that prior to this act most towing firms accepted cash only to cover all of their services

[8]U.S. Const. amend. 14, § 1; Const. art. 1, § 12.

before releasing the vehicle. The rationale for requiring cash only is quite elementary. The towing firm and the vehicle operator or owner have entered into this arrangement involuntarily. This relationship is instigated by a third party, the property owner, who wishes to have the vehicle removed. Generally, the owner or operator of the vehicle is not happy that his car has been towed away. Once his car has been returned he has no incentive to pay the towing firm for its unwanted and unrequested services which have not benefited the owner or operator. Thus, to insure collection of its fees, the towing firm required cash before giving up the car.

The reasons for requiring towing firms to accept commercially reasonable tender and to release vehicles without prior payment in certain instances are also quite clear. Because the relationship between the towing firm and the vehicle operator or owner is involuntarily created, the vehicle operator or owner has no advance warning of the towing firm services for which he will have to pay. Many times he may not have the cash available in order to retrieve his vehicle, especially in this day and age where individuals rely to a great extent on credit cards or acceptance of their personal checks for their day–to–day commercial transactions. Further, oftentimes the owner or operator learns his vehicle has been removed after business hours when it could be extremely difficult to obtain cash sufficient to retrieve his vehicle. This may be especially burdensome if the vehicle is removed on a Friday night when the owner or operator may have to wait until banks open on Monday morning before he can garner the necessary funds in cash. Of course, all the while his vehicle remains with the towing firm, and storage fees are increasing. If the owner or operator is in a distant city, this compounds the problem since alternative modes of transportation home may not be available and a place to stay may not be available for the owner or operator until he can retrieve his vehicle.

 Although we recognize the burdens placed on a towing firm by requiring it to accept commercially reasonable tender other than cash and to extend credit, it must be stressed here that the legislature is dealing with a somewhat unique situation. Because of society's great dependence on private vehicles and the obvious dangers which may arise when a person is unexpectedly separated from his vehicle, coupled with the safeguards found in RCW 46.52-.1196 to facilitate collection in the event of nonpayment, we believe reasonable grounds do exist for requiring towing firms to accept commercially reasonable tender and to extend credit in certain instances. Therefore, we find that RCW 46.52.1196 does not violate respondents' equal protection rights.

We find no merit in respondents' remaining arguments for upholding the trial court's decision. Because we find chapter 281 to be a valid exercise of the State's police power and find that chapter 281 does not impermissibly infringe upon respondents' constitutional rights, we reverse the judgment of the trial court declaring chapter 281 unconstitutional.

 With respect to respondents' motion for attorney fees, we are satisfied the trial court correctly denied respondents' motion. It has long been recognized in this jurisdiction that attorney fees may be recovered only when authorized by a private agreement of the parties, a statute, or a recognized ground of equity. *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 557 P.2d 342 (1976); *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 111 P.2d 612 (1941). No statute or private agreement authorizing attorney fees exists in this case. Respondents suggest that attorney fees should be awarded here under either the "common fund" doctrine, *see Weiss v. Bruno,* 83 Wn.2d 911, 523 P.2d 915 (1974); *Peoples Nat'l Bank v. Jarvis,* 58 Wn.2d 627, 364 P.2d 436 (1961), or the "private attorney general" doctrine. As the name implies, the "common fund" doctrine requires the prevailing party to have brought suit to preserve or protect

a fund which benefits the party and others. Even if respondents had prevailed here, no fund exists out of which attorney fees might be granted. As for the "private attorney general" doctrine, we have not extended that doctrine beyond its application in a "common fund" situation. *See Swift v. Island County,* 87 Wn.2d 348, 362–63, 552 P.2d 175 (1976). This present case does not lend itself to considerations of extending the doctrine.

The trial court's denial of respondents' motion for attorney fees is affirmed.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.