Dover Municipal Court,
No. 5240.

STATE *v.* NORMAN ROGERS *& a.*

Argued May 5-6, 1964.
Decided May 26, 1964.

*William Maynard*, Attorney General, and *George S. Pappagianis*, Deputy Attorney General (*Mr. Pappagianis* orally), for the State.

*Fisher, Parsons, Moran & Temple* (*Mr. Harold D. Moran* orally), for the defendants.

LAMPRON, J. The transferred questions pertain generally to the validity of RSA 578:4, 5; the validity and effect of chapter 32, section 3 of the Dover ordinances which became effective when

approved at an election held December 1, 1931; and the validity and effect of a resolution adopted by the city council of Dover on October 9, 1956, purportedly in pursuance of RSA 578:5.

RSA 578:4 reads as follows: "SUNDAY SALES, ETC. No person shall keep his shop, warehouse, cellar, restaurant, or workshop open for the reception of company, or shall sell or expose for sale any merchandise whatever on the Lord's Day; but this section shall not be construed to prevent the entertainment of boarders, nor the sale of milk, bread, and other necessaries of life, nor of drugs and medicines."

The above section was first adopted in 1860 (Laws 1860, c. 2365, s. 1) in substantially its present language as "An Act for the better observance of the Sabbath." In 1878 it was incorporated in our General Laws as section 10 of chapter 273 entitled "Offenses against Morality and Religion."

Section 3 of that chapter prohibited, in substantially the same language as RSA 578:3, work, business, labor (except works of necessity and mercy), play, game or recreation on the first day of the week, commonly called the Lord's Day. The main provisions of section 3 had been contained, in somewhat different language, in the N. H. Provincial Act of William 3d, passed July 19, 1700. 1 Laws of N. H. 672. *George* v. *George*, 47 N. H. 27, 29. They were also in an act passed June 23, 1785 (5 Laws of N. H. 75); in an act passed February 2, 1789 (*Id.*, 372); and can be found in the different compilations of our laws to the present.

An examination of the history and language of the early provisions of what are now RSA 578:3 and 4 dealing with Sunday work and sales leads to the inevitable conclusion that their original enactment was motivated by religious forces and considerations. They originated as essentially religious statutes designed to promote and assure the due observance of religious duties on Sunday. *Varney* v. *French*, 19 N. H. 233, 235; *George* v. *George, supra.*

RSA 578:5, however, was adopted more than two centuries after the first legislation pertaining to the observance of Sunday. Laws 1931, c. 155, s. 1. It now reads as follows: "EXCEPTIONS. Nothing in this chapter shall prevent the selectmen of any town, or the city council of any city, from adopting by-laws and ordinances permitting and regulating retail business, plays, games,

sports and exhibitions on the Lord's Day, provided such by-laws and ordinances are approved by a majority vote of the legal voters present and voting at the next regular election. But no such by-laws or ordinances shall permit public dancing, horse racing, or prize fights at any time on the Lord's Day, or the games of baseball, hockey, or football, or any games, sports, or exhibitions of physical skill at which admission is charged or donations accepted, to be held earlier than one o'clock in the afternoon, or the opening of theatrical or vaudeville performances or motion pictures earlier than two o'clock in the afternoon."

The question before us is whether the presently existing Sunday legislation regulating work and sales, particularly RSA 578:4 and 5, is still essentially religious in character, as contended by the defendants, and thus constitutes "law respecting an establishment of religion" in violation of the First and Fourteenth Amendments to the Constitution of the United States and is also violative of our State Constitution. There is nothing in the record before us, nor has argument been made, that the free exercise of the faith of either defendant has been interfered with. Hence we are not called upon to consider the "free exercise" clause of the First Amendment nor is there any basis for doing so. *McGowan* v. *Maryland*, 366 U. S. 420, 466.

If, as properly contended by the defendants, in their brief, the original purpose of Sunday legislation "was to promote due observance of the Lord's Day by putting a stop to unnecessary worldly business and labor, not only for the sake of public decency and order, but to withdraw a man's own thoughts from secular concerns and turn them to the duties of religion," enactment in 1931 of RSA 578:5 was a strong indication of a decided change in the purpose of this legislation. This exception, to the previous strict prohibition of business transactions (RSA 578:4) and of work and sports (*Id.*, 3) on Sundays, which would permit on that day activities previously considered as profane, lends substance to the State's contention that the present purpose and effect of such Sunday legislation is to provide a uniform day of rest for all New Hampshire citizens under authority of the police power. 73 Harv. L. Rev. 729, 730-732. Furthermore, enactment by the Legislature shortly thereafter of RSA 275:32 and 33 (Laws 1933, *c.* 130, *s.* 1) "an act to provide one day rest in seven," corroborates the State's position

that the concern of the legislators in maintaining and amending the existing Sunday legislation was not to coerce religious observance of the Lord's Day but to safeguard and improve the health, safety, recreation and general well-being of our citizens.

It is fair to assume that the Legislature was prompted to adopt these measures to obviate the deleterious effect of the adoption by cities and towns of ordinances authorized by RSA 578:5 permitting and regulating retail business, plays, games, sports and exhibitions on the Lord's Day which might militate against the State's legitimate concern for the health and welfare of its citizens fostered by an enforced day of rest. It thus provided that if an employee is required "to do on Sunday the usual work of his occupation . . . he is allowed during the six days next ensuing twenty-four consecutive hours without labor." RSA 275:32. To further assure the day of rest of the employee, this legislation (*s.* 33) provided that "No employer shall operate any such business on Sunday unless he has posted in a conspicuous place on the premises a schedule containing a list of employees who are required or allowed to work on Sunday and designating the day of rest for each, and shall promptly file a copy of such schedule and every change therein with the commissioner of labor. *No employee shall be required or allowed* to work on the day of rest designated for him." (Emphasis supplied).

In order to better promote the general welfare which results from periodic respite from work by its citizens, a State may "set one day apart from all others as a day of rest, repose, recreation and tranquility — a day which all members of the family and community have the opportunity to spend and enjoy together, a day on which there exists relative quiet and disassociation from the everyday intensity of commercial activities, a day on which people may visit friends and relatives who are not available during working days." *McGowan* v. *Maryland,* 366 U. S. 420, 450; *Braunfeld* v. *Brown,* 366 U. S. 599, 607.

If for this purpose a single day is to be chosen as a day of rest, it would be unrealistic, unpopular, wasteful and detrimental to its enforcement to select a day other than that which most citizens would chose of their own accord. *McGowan* v. *Maryland, supra,* 452; 73 Harv. L. Rev. 729, 735. "The fact that this day is Sunday, a day of particular significance for the dominant Christian sects, does not bar the State from achieving its secular goals. To say that the State cannot prescribe Sunday as a day of rest for these purposes solely because centuries ago

such laws had their genesis in religion would give a constitutional interpretation of hostility to the public welfare rather than one of mere separation of church and State." *McGowan* v. *Maryland, supra,* 445.

In the light of the evolution of our Sunday closing laws, and especially the fairly recent and continuing emphasis by our Legislature on secular considerations, we hold that even though our laws retain some of their original religiously associated language, they are now essentially secular rather than of a religious character and they presently bear no relationship to an establishment of religion as these words are used in the First Amendment to the Constitution of the United States and they do not violate any provisions of our Constitution. *McGowan* v. *Maryland, supra,* 450; *Gallagher* v. *Crown Kosher Market,* 366 U. S. 617; *Two Guys* v. *McGinley,* 366 U. S. 582; *Braunfeld* v. *Brown,* 366 U. S. 599.

The defendants also maintain that RSA 578:5 is unconstitutional because it is an invalid delegation of legislative power by the Legislature to local governments in violation of Part II, Article 2d of our Constitution and is an attempt to allow local governments to suspend the state law contrary to Part I, Article 29th of our Constitution.

While general statutes must be enacted by the Legislature, it has long been the law in this State that the power to make local regulations having the force of law in limited localities may be committed by the Legislature to other bodies representing the people of local districts or to the people themselves. "Our whole system of local government in cities, villages, counties and towns, depends upon that distinction. The practice has existed from the foundation of the state, and has always been considered a prominent feature in the American system of government." *Goodrich Falls Co.* v. *Howard,* 86 N. H. 512, 518; *State* v. *Noyes,* 30 N. H. 279; *State* v. *Hayes,* 61 N. H. 264, 328; *Gooch* v. *Exeter,* 70 N. H. 413, 414; *Ferretti* v. *Jackson,* 88 N. H. 296, 299; *State* v. *Guertin,* 89 N. H. 126; *State* v. *Cox,* 91 N. H. 137. See *Robwood Adv. Asso.* v. *Nashua,* 102 N. H. 215, 219.

Although compulsory rest is a problem of uniform concern throughout the state, local differences may well exist in the nature of the activity to be permitted and its impact upon the opportunity for relief from the regular routine so that the Legislature may deem it advisable to permit the towns and cities to

adopt regulations pertaining to sales and other activities to be permitted locally on Sunday. These regulations, however, must relate to the aims of the Legislature and must not be contrary thereto. *State* v. *Griffin*, 69 N. H. 1, 30; *Two Guys from Harrison, Inc.* v. *Furman*, 32 N. J. 199; *McGowan* v. *Maryland*, 366 U. S. 420, 523.

If the authority granted to towns and cities by RSA 578:5 amounts to a power to suspend the state Sunday laws in their locality (which it is unnecessary to decide) it is done by authority derived from the Legislature itself and is not in violation of Const., Pt. I, *Art.* 29th.

The fact that this will result in some localities permitting the sale of commodities on Sunday in addition to those permitted by RSA 578:4 while other communities will prefer not to do so; and that those localities which permit sales of merchandise may differ among them as to the type of articles permitted to be sold does not in and of itself constitute improper classification and unjust discrimination. *McGowan* v. *Maryland*, 366 U. S. 420, 425, 427. Nor does the fact that merchants in Rollinsford can sell certain merchandise on Sunday and merchants in the adjoining city of Dover cannot sell the same articles constitute a violation of the equal protection of the law. *State* v. *Griffin*, 69 N. H. 1; *McGowan* v. *Maryland, supra*, 427.

The city council of Dover adopted an ordinance under RSA 578:5 which was approved by the voters on December 1, 1931. Dover Ordinances, chapter 32, section 3. It reads as follows: "It shall be lawful to conduct such retail business as is not already permissible under Revised Statutes Annotated, Chapter 578, Section 4, on the Lord's Day in the City of Dover, but only of such merchandise and commodities as shall be designated by the City Council and under such regulations as the City Council may prescribe."

The defendants admit, and we agree, that the provision that the merchandise and commodities sold shall be designated by the city council without resubmitting to the voters the designation made by the council is invalid. Accordingly the defendants seek to eliminate this illegality by placing a period after the word "Dover" thus giving the ordinance the effect of authorizing the conduct of all retail business in Dover on Sunday. We are convinced this procedure would give the ordinance a meaning the city council and the voters did not intend and this cannot be done. *Woolf* v. *Fuller*, 87 N. H. 64, 69. The resolution adopted

by the city council on October 9, 1956, which purported to specify what merchandise and commodities could be sold in Dover on Sunday was never submitted to the voters and is not operative. *State* v. *Sukoff*, 105 N. H. 70. The activities of the defendants were therefore governed by the provisions of RSA 578:4.

The record is insufficient to permit an adequate consideration of and answer to other transferred questions and in view of the result reached we decline to answer them.

*Remanded.*

All concurred.