[No. 37753. En Banc. November 10, 1966.]

THE COUNTY OF SPOKANE, *Respondent*, v. VALU-MART, INC., *Appellant*.*

*Reported in 419 P.2d 993.

*Carl Maxey* and *Riner E. Deglow*, for appellant.

*George A. Kain* and *Edward J. Parry*, for respondent.

HALE, J.—Has Spokane County, in an ordinance affecting Sunday business gone beyond the legitimate police power? The Board of Spokane County Commissioners enacted ordinance No. 56-436 November 20, 1956, making it a criminal offense to operate a place of business on Sunday for the purpose of selling major household appliances, furniture and other described household furnishings. Valu-Mart, a large department store, now appeals from a judgment and sentence of conviction which imposed a $250 fine plus costs of $33.20, and challenges the constitutionality of the ordinance on formally agreed and stipulated facts.

The ordinance (Spokane County Code 7.12.010, *et seq.*) reads:

An ordinance relating to public peace and morals, prohibiting the sale of new and used furniture, major household appliances, television sets, floor coverings, bedding and draperies on Sunday, providing a penalty for the violation thereof, repealing all ordinances or parts of ordinances in conflict therewith and declaring an emergency.

The County of Spokane does ordain:

Section 1. *Definitions.* The term "furniture" as used in this ordinance shall mean the main movable household articles used in living areas and outdoor porches and patios. Such furniture shall include, but is not limited to, chairs, tables, beds, davenports, sofas, dressers, desks, and whether the same are new or used.

The term "household appliances" as used in this ordinance shall mean stoves, ranges, refrigerators, hot water heaters, space heaters, electric sinks, dishwashers, garbage disposals, clothes dryers, clothes washers, and freezers, and whether the same are new or used.

The term "floor coverings" as used in this ordinance shall mean rugs, carpets, rug pads, as distinguished from tile, linoleum, or such like material as is permanently attached to the dwelling.

The term "bedding" as used in this ordinance shall mean mattresses, mattress pads, bed springs, blankets, pillows and sheets.

The term "draperies" as used in this ordinance shall mean draped or hung fabric, as distinguished from flat or roll type window blinds.

The term "bartering, exchanging or selling at retail" as used in this ordinance shall mean those transactions subject to the Washington State Retail Sales Tax.

Section 2. *Sales of furniture, major household appliances, television sets, floor coverings, bedding and draperies prohibited on Sunday.* No person, firm or corporation, whether owner, proprietor, agent or employee, shall keep open, operate or assist in keeping open or operating any place or premises or residence, whether open or enclosed, for the purpose of selling, bartering or exchanging or offering for sale, barter or exchange at retail any new or used furniture, major household appliances, television sets, floor coverings, bedding and draperies on the first day of the week, commonly called Sunday.

This section shall not apply to a private citizen selling, exchanging or bartering his privately owned furniture, major household appliances, television sets, floor coverings, bedding and draperies used in his residence, from his own place of residence.

Section 3. *Penalty.* Any person, firm, or corporation violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine in any sum not exceeding Two Hundred Fifty Dollars ($250.00) or by imprisonment in the county jail for a term not exceeding ninety (90) days, or by both such fine and imprisonment.

Section 4. *Repeals.* All ordinances or parts of ordinances in conflict herewith are hereby repealed.

Section 5. *Effective Date.* An urgency and emergency

for the passage of this ordinance is hereby declared to, and does, exist, and the same shall take effect and be in force from and after its passage.

Valu-Mart does not here question the validity of Sabbath laws generally, or RCW 9.76.010[1] in particular, but confines its attack to the proposition that the ordinance constitutes an arbitrary, discriminatory and unreasonable exercise of the police power, describing this law as one having no reasonably discernible relationship to the public peace, health, safety, morals or welfare. Accordingly, we do not review the plethora of authority having to do with Sabbath legislation,[2] nor analyze our own decisions covering this subject,[3] but limit this inquiry to ascertaining if the ordinance can be said to have any rational connection with the public peace, safety, health, morals or welfare.

[1] "Every person who, on the first day of the week, shall promote any noisy or boisterous sport or amusement, disturbing the peace of the day; or who shall conduct or carry on, or perform or employ any labor about any trade or manufacture, except livery stables, garages and works of necessity or charity conducted in an orderly manner so as not to interfere with the repose and religious liberty of the community; or who shall open any drinking saloon, or sell, offer or expose for sale, any personal property, shall be guilty of a misdemeanor: *Provided*, That meals, without intoxicating liquors, may be served on the premises or elsewhere by caterers, and prepared tobacco, milk, fruit, confectionery, newspapers, magazines, medical and surgical appliances may be sold in a quiet and orderly manner. In works of necessity or charity is included whatever is needful during the day for the good order or health or comfort of a community; but keeping open a barber shop, shaving or cutting hair shall not be deemed a work of necessity or charity, and nothing in this section shall be construed to permit the sale of uncooked meats, groceries, clothing, boots or shoes." RCW 9.76.010.

[2] A few of the leading cases on this subject are: *Petit v. Minnesota,* 177 U.S. 164, 44 L. Ed. 716, 20 Sup. Ct. 666 (1900); *McGowan v. Maryland,* 366 U.S. 420, 6 L. Ed. 2d 393, 81 Sup. Ct. 1101 (1961); *Two Guys from Harrison-Allentown, Inc. v. McGinley,* 366 U. S. 582, 6 L. Ed. 2d 551, 81 Sup. Ct. 1135 (1961); 46 A.L.R. 290; 62 A.L.R. 642; 119 A.L.R. 752; 57 A.L.R.2d 975; 91 A.L.R.2d 763.

[3] *Tacoma v. Krech,* 15 Wash. 296, 46 Pac. 255 (1896), overruled in *State v. Nichols,* 28 Wash. 628, 69 Pac. 372 (1902); *State v. Bergfeldt,* 41 Wash. 234, 83 Pac. 177 (1905); *In re Donnellan,* 49 Wash. 460, 95 Pac. 1085 (1908); *In re Ferguson,* 80 Wash. 102, 141 Pac. 322 (1914); *Motor Car Dealers' Ass'n of Seattle v. Fred S. Haines Co.,* 128 Wash. 267, 222 Pac. 611 (1924); *Seattle v. Gervasi,* 144 Wash. 429, 258 Pac. 328 (1927); *State v. Grabinski,* 33 Wn.2d 603, 206 P.2d 1022 (1949).

We are not concerned with the wisdom of this ordinance, for the people through their lawfully designated representatives have reserved unto themselves the constitutional power to enact all kinds of laws, both wise and foolish, good and bad, effective or ineffectual. Our sole function is simply to determine if Spokane County had the constitutional power to enact and enforce this ordinance.

■ This being a measure to prohibit the carrying on of a particular calling or business on a specified day of the week relating to the sale or offering for sale of designated articles and kinds of articles, constitutes a use of the police power toward and concerning certain classified activities and categories of articles of commerce. It classifies both the business and the commodities dealt in by the business. Where there is a classification of both conduct and things for purposes of regulation under the police power, the classification must operate equally upon every activity and thing falling within each class, and must have both a reasonable and rational relationship toward fostering or preserving the public peace, health, safety, morals or welfare.

We can better understand the ordinance if we compare it with other legislation having apparently similar aims. First, it does not pertain to a public utility or other regulated industry, business, profession, calling, trade or activity deemed in law to be affected with the public interest. It does not concern the handling of peculiarly sensitive materials or products which, because of their inherently dangerous or unique qualities, renders them amenable to almost plenary police regulations, such as alcoholic liquors, drugs and pharmaceuticals, explosives, inordinately heavy and massive equipment, high-voltage electrical installations, and the like. It does not relate to the handling of articles or the performing of services which, because so conceivably affecting the public health, safety or security, may be carried on only by licensed personnel. No one has argued that furniture and appliance stores should, as are barber shops, loan companies, public utilities, hotels, grain warehouses, stock exchanges and innumerable other similarly identified

businesses, be subject to regulation for the protection of the public.

The things forbidden to be sold under this ordinance fall within the most ordinary and mundane categories of commerce, subject to no greater regulation under the police power than groceries, minor appliances, fuel oil, coal, wood, building materials, shrubbery, garden tools, automobile accessories, and a myriad of other articles and devices, most of which are offered for sale by Valu-Mart and which, by definition, are excluded from the ordinance. These latter articles and thousands like them differ in no respect as to their effect upon the public health, safety, morals and welfare than those which cannot be offered for sale on Sunday under the ordinance. Curiously, although the measure specifically prohibits the sale of television sets on Sunday, it allows the sale of radios. The reason remains obscure unless radios must be generally classified as minor appliances and television sets as major ones. Would this distinction apply if the television set be small and the radio set large? And what of stereophonic record players, many types of which must be classified as major, both in price and size, yet presumably may be sold on Sunday under this ordinance.

Nor should the ordinance be deemed day-of-rest legislation, designed to provide every employed person with a day of rest during the work week. *State v. Grabinski,* 33 Wn.2d 603, 606, 206 P.2d 1022 (1949), cited by respondent, is actually based on the premise that "Such legislation . . . should be regarded as day-of-rest legislation rather than as Sabbath or Sunday closing laws," and supports this proposition with a statement from *Seattle v. Gervasi,* 144 Wash. 429, 258 Pac. 328 (1927), that the establishment of a compulsory day of rest in each week is a legitimate exercise of the police power. We affirm the rule that legislation designed to assure one or more days of rest each week lies within the ambit of the police power, but observe that the ordinance under inquiry does not purport to achieve this laudable attainment.

Nowhere does the ordinance imply that the police power is exerted for the health, welfare, morals, and safety of the

county by curtailing the hours during which an employee—man, woman or child—may be required by his employer to labor. So far as pertinent to Valu-Mart—which operates and carries for sale thousands of items in its drug, appliance, housewares, toy, record, luggage, automotive accessories and supplies, hardware and sporting goods, women's and children's apparel, men's and boys' apparel, shoe, jewelry, camera and presumably grocery departments—all of these departments may be maintained in full operation on Sunday as long as the clerks do not sell one of the prohibited items.

Neither is this an ordinance to preserve the peace and quiet of the Sabbath. A limitation on sales of a few lawful and nonsensitive articles, while allowing sales of thousands of other useful and equally nonsensitive articles, deprives the ordinance of any religious connotation. Obviously, the enactment fosters neither a particular religion nor religious observance in general, nor prevents impairment of religious observances, and does not insure the quiet and peace of the Sabbath for anyone.

The ordinance, moreover, does not come within the taxing authority either, whereof it is said that government possesses near plenary power to classify, and may establish categories of both broad and extremely narrow definition. The minute distinctions upheld in *Hemphill v. Tax Comm'n*, 65 Wn.2d 889, 400 P.2d 297 (1965), in a ruling that the retail sales tax on ice skating was constitutional even though the measure exempted bowling, have no application to the instant case for this ordinance is not a revenue measure and cannot be judged by the standards applicable thereto.

That the ordinance is neither designed to nor will affect public peace, health, safety, morals or welfare may also be seen in the exemption of sales made to out-of-state and foreign residents. By the express language of § 1 (Spokane County Code 7.12.010), the prohibition applies only to transactions subject to the Washington State retail sales tax. RCW 82.08.030 (14) and (18) exclude from that tax sales made to nonresidents if delivery is to a carrier for transportation outside the state. Thus, a department store or general merchandising establishment may, under the ordinance,

keep and stay open on Sunday for the sale of thousands of items other than furniture, major appliances, bedding, etc., and may sell the prohibited articles to any persons coming into the store who reside out of state or in a foreign country. We cannot accept the argument that the public peace, safety and welfare may be fostered by forbidding furniture and appliance sales to Washingtonians, yet abridged if such sales to nonresidents and aliens are allowed. Such distinctions, although perhaps suitable in a tax law, have little relevance to a police measure.

And, assuming arguendo that the sale of furniture and major household appliances could be said to be a business affected with the public interest and thus subject to inordinate police regulation, the validity of the ordinance as a constitutional exercise of the police power remains doubtful because there is no discernible connection between the ends to be attained and the means by which they are to be achieved. We see no fair, just and reasonable relationship between enforcement of the ordinance and a fostering of the public peace, health, safety, welfare or morals. 11 Am. Jur. *Constitutional Law* § 274 (1937).

The police power is not plenary, but, rather, circumscribed with sensible limitations. To be valid, a police measure must be reasonably suitable for and appropriate to the attainment of such ends as legitimately fall within the police power. 11 Am. Jur. *Constitutional Law* § 303 (1937). Wide and comprehensive as this power may be in promoting the public peace, health, safety, morals, education, good order and welfare, the law fastens upon it a salutary limitation that it must reasonably tend to correct some evil or promote some interest of the state. If it be invoked to achieve a legitimate end by reasonable means, it will be sustained. As we said in *Shea v. Olson*, 185 Wash. 143, 153, 53 P.2d 615, 111 A.L.R. 998 (1936):

> Police power is an attribute of sovereignty, an essential element of the power to govern, and a function that cannot be surrendered. It exists without express declaration, and the only limitation upon it is that it must reasonably tend to correct some evil or promote some interest of the state . . . ."

*Clark v. Dwyer,* 56 Wn.2d 425, 353 P.2d 941 (1960); *Treffry v. Taylor,* 67 Wn.2d 487, 408 P.2d 269 (1965). We agree that this broad power comes within the statement of the same case (*Shea v. Olson, supra,* at 154), that

> In determining whether a law comes within the police power of the state, it is not incumbent upon the court to find that facts which would justify such legislation actually exist. If a state of facts which would justify the legislation can *reasonably* be conceived to exist, the court must presume that it did exist and that the law was passed for that purpose. (Italics ours.)

But the end must be legitimate and the means reasonable.[4] Adopting the rule stated in 16 C.J.S. *Constitutional Law* § 195 (1956) by setting it forth verbatim, this court recently, in *Remington Arms Co. v. Skaggs,* 55 Wn.2d 1, 6, 345 P.2d 1085 (1959), went on to add:

> [T]o justify any law upon the theory that it constitutes a reasonable and proper exercise of police power, it must be reasonably necessary in the interest of the health, safety, morals, or welfare of the people. This exercise of police power must pass the judicial test of reasonableness.

Accord: *State v. Spino,* 61 Wn.2d 246, 377 P.2d 868 (1963); *Henderson v. Antonacci,* 62 So.2d 5, 8 (Fla. 1952); affirmed, *Kelly v. Blackburn,* 95 So.2d 260 (Fla. 1957); *Mt. Vernon v. Julian,* 369 Ill. 447, 17 N.E.2d 52, 119 A.L.R. 747 (1938); 11 Am. Jur. *Constitutional Law* § 288 (1937).

■ We therefore conclude that the means adopted here, the closing of appellant's furniture, bedding, drapery and major appliance departments and forbidding the sale of television sets on Sunday, under an ordinance which leaves in operation all of the other departments in the store, are not reasonably necessary and appropriate to the accom-

---

[4]The Supreme Court of Colorado early in its history in *Denver v. Bach,* 26 Colo. 530, 58 Pac. 1089, 46 L.R.A. 848 (1899), held that a clothing store, being a business not liable to interfere with public morality or create disorder and one over which a city had no special control, could not constitutionally be singled out and made subject of prohibition on Sunday. In a later case, the same court, being unable to see where a Sunday ban by municipal ordinance on sale of meat or groceries would promote the peace, welfare, health or morals, declared such an ordinance invalid. *Mergen v. Denver,* 46 Colo. 385, 104 Pac. 399 (1909).

plishment of any legitimate end cognizable under the police power. Further, banning the merchandising of such items to residents of this state on Sunday while permitting the sale of the same prohibited articles to nonresidents on the same day, will neither foster nor secure the public peace, health, safety, morals or welfare. The ordinance is thus an excessive and invalid exercise of the police power and void.

The judgment is reversed and the action dismissed.

ROSELLINI, C. J., FINLEY, WEAVER, and HUNTER, JJ., concur.

HAMILTON, J. (dissenting)—I find myself constrained to disagree with the majority in its disposition of this case.

The principal basis upon which my dissent rests is that both appellant and the majority conveniently overlook and disregard the existence and impact of the state statute (RCW 9.76.010 n.1) which, with certain exceptions not here in issue, bans the Sunday sale of *any personal property.* Neither appellant nor the majority contend that the state statute does not apply to appellant's general retail business, for obviously the state statute does apply to appellant just as much as it does to any other retailer. The fact that RCW 9.76.010 may or may not be fully enforced, may or may not be antiquated, and may or may not be repealed does not warrant or justify ignoring it in considering the validity of the challenged county ordinance. The unchallenged fact is that it does proscribe, in Spokane County and statewide, the Sunday sale of the articles here in question.

Since neither the constitutionality of the statute nor the fact that it proscribes the Sabbath merchandising of the articles interdicted by the county ordinance is questioned, it is difficult to fully rationalize preoccupation and distinctions between the sales of television sets and radios, furniture and fuel oil, or taxable and nontaxable personal property sales. This is so because the county ordinance does not purport to permit the sale of articles prohibited by the statute any more than it undertakes to prohibit the sale of articles permitted to be sold under the statute. In short, all the county ordinance in fact does is to supplement or aug-

ment the statute by providing a local penalty for the sale of that which is already forbidden. Thus, if the statute be constitutionally reasonable in its proscription of the sales in question, the majority opinion reduces itself to a holding that Spokane County may not exercise concurrent municipal jurisdiction over the same sales. And, if this be so, then the majority's holding becomes merely a philosophical disagreement as to the wisdom or unwisdom of the particular county legislation—a form of disagreement which the majority rightfully proclaims we may not judicially entertain.

Whatever may be our personal views as to the modern-day suitability of RCW 9.76.010, the fact remains that we have held day-of-rest legislation, in varying contexts, including that of the state statute, to be a valid and constitutional exercise of legislative police power. *State v. Nichols,* 28 Wash. 628, 69 Pac. 372 (1902); *State v. Bergfeldt,* 41 Wash. 234, 83 Pac. 177 (1905); *State v. Herald,* 47 Wash. 538, 92 Pac. 376 (1907); *In re Donnellan,* 49 Wash. 460, 95 Pac. 1085 (1908); *In re Ferguson,* 80 Wash. 102, 141 Pac. 322 (1914); *Motor Car Dealers' Ass'n of Seattle v. Fred S. Haines Co.,* 128 Wash. 267, 222 Pac. 611, 36 A.L.R. 493 (1924); *Seattle v. Gervasi,* 144 Wash. 429, 258 Pac. 328 (1927); *State v. Grabinski,* 33 Wn.2d 603, 206 P.2d 1022 (1949).

*In re Ferguson, supra,* and *Seattle v. Gervasi, supra,* stand, in the day-of-rest arena, for the proposition that a county or municipality may enact concurrent ordinances in aid of or in addition to RCW 9.76.010, so long as their enactments are not in conflict with that statute and are not patently unreasonable. Neither case requires that the county or municipality enact the state statute in toto, and neither case suggests that the state has pre-empted the field of day-of-rest legislation.

This concurrent power upon the part of the county or municipality springs expressly and directly from our Const. art. 11, § 11, which provides:

> Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.

It cannot be seriously contended that the ordinance here in question is in conflict with the statute, for it neither forbids nor permits more than the statute. And, it would seem logical to conclude that if the statute is deemed reasonable in its interdiction of all but certain items not here in issue, then Spokane County's ordinance would be reasonable when it purports to interdict only a portion of the items included within the state restriction.

Moreover, it has been authoritatively held that territorial uniformity within a state, in the application of day-of-rest legislation, is not a constitutional prerequisite to validity. *McGowan v. Maryland,* 366 U.S. 420, 6 L. Ed. 2d 393, 81 Sup. Ct. 1101 (1961). See, also, *State v. Rogers,* 105 N.H. 366, 200 A.2d 740 (1964); *People's Appliance & Furniture, Inc. v. City of Flint,* 358 Mich. 34, 99 N.W.2d 522 (1959); *West Orange v. Carr's Dep't Store,* 53 N.J. Super. 237, 147 A.2d 97 (1958). Likewise, it has been held that the fact greater penalties may be exacted for the sale of some items than for others, under a system of day-of-rest regulations, does not render the regulations invalid. *Two Guys From Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582, 6 L. Ed. 2d 551, 81 Sup. Ct. 1135 (1961).

Therefore, the county or municipal exercise of a constitutional and concurrent police power, in a field and over a subject matter that has been judicially declared to be constitutionally open to appropriate legislation, should not be lightly cast aside simply because members of this court may choose to disagree with the legislative body's choice of subject matter, their choice of language, their decision to partially augment a state statute, or the geographic reach of their jurisdiction. We have not done so in other fields, and we should not do so here. Cf. *Bellingham v. Schampera,* 57 Wn.2d 106, 356 P.2d 292 (1960), and examples cited therein.

Nevertheless, since the majority feels compelled to address itself extensively to the reasonableness issue, some further comment is required. This comment should, perhaps, be prefaced by the pertinent observation of Judge

Hill, writing for the court in *State v. Grabinski, supra,* at 607, to the effect that:

No agreement is to be expected between different individuals as to what items should be sold on the day of rest, and it is generally held that the legislature has the right to designate the articles which can be legally sold on that day.

Recognizing the wisdom of this remark, it is appropriate, then, to again allude to the United States Supreme Court decision in *Two Guys From Harrison-Allentown, Inc. v. McGinley, supra,* for in that case the court was treating with the application of day-of-rest legislation as it affected a business operation somewhat analogous to that of appellant. In speaking of the issue of reasonableness and rationality of the there challenged legislation as related to purpose, the court stated, at 591:

It was within the power of the legislature to have concluded that these businesses were particularly disrupting the intended atmosphere of the day because of the great volume of motor traffic attracted, the danger of their competitors also opening on Sunday and their large number of employees. "Evils in the same field may be of different dimensions and proportions, requiring different remedies. . . . Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others."

In the instant case, the main thrust of the ordinance is toward restricting the Sunday sale of major household furnishings and appliances. It is fairly common knowledge that these items, for the most part, are heavy and not easily moved except by truck or van; that because they are large items and occupy considerable floor and store space the trend is toward multiservice facilities; and that week-end "sales" of such furnishings are often held; all of which, when viewed through the local legislative eye, could tend to encourage undue and unfair competition as well as unusual and unnecessary Sunday urban traffic. Fair consideration being given to these factors, however one might otherwise quarrel

with them, is it not realistically conceivable that the legislative body of Spokane County could have concluded that Sunday trade in the proscribed articles would not comport with the intended atmosphere of a day of rest, and that the local traffic situation as well as the potential threat of all like and related businesses being economically forced to remain open on Sunday fairly warranted and justified a local regulation and penalty superimposed upon the state statute?

Although I may or may not personally agree with the 1956 legislative determination of the Spokane County Commissioners, it seems to me there is discernible room for an honest difference of opinion, then and now, concerning the necessity, the desirability, and the advisability of their decision to augment the state statute. And, if in truth there be room for varying opinions upon the matter, then this court should be extremely chary in concluding that their legislative judgment is wholly unreasonable or that it has been exercised in a patently arbitrary and capricious fashion. We should be as vigilant and circumspect in avoiding judicial impingement upon legislative prerogatives as we are in guarding against legislative encroachments upon the judicial province.

I would, therefore, conclude, upon the basis of the present existence of our state statute, the import of Const. art. 11, § 11, our own prior decisions, the decisions of the United States Supreme Court, and the weight of authority upon the overall subject of the constitutionality of day-of-rest legislation, that the ordinance in question is a valid exercise of the pertinent legislative authority.

In my opinion, the judgment of the trial court should be affirmed.

HILL, DONWORTH, and OTT, JJ., concur with HAMILTON, J.