[No. 61217-0.    En Banc.    March 23, 1995.]

JJR Inc., et al, *Appellants*, v. The City of Seattle,
*Respondent.*

*Gilbert H. Levy,* for appellants.

*Mark H. Sidran, City Attorney,* and *Ada Ko* and *Shelley J. Hickey, Assistants,* for respondent.

DURHAM, C.J. — JJR Inc., Autumn Willows, and Gina Ware challenge Seattle Municipal Code (SMC) 6.202.230, an administrative licensing scheme governing adult entertainment license revocation and suspension. JJR is a Washington corporation operating Rick's, a Seattle nightclub featuring nude dancing. Willows and Ware perform nude dancing at Rick's. The City of Seattle (Seattle) requires that nude dancing establishments, and the performers who work there, obtain adult entertainment licenses. JJR, Willows and Ware[1] contend that Seattle's administrative licensing scheme is facially unconstitutional because it fails to provide a stay of license revocation or suspension pending judicial review. They argue this violates the first amendment to the United States Constitution and article 1, section 5 of the Washington State Constitution.

Seattle argued to the King County Superior Court that the statutory writ procedures under RCW 7.16 allow for the cessation of penalties pending judicial review of adult entertainment license revocation and suspension. After cross motions for summary judgment and following a motion for reconsideration, the Superior Court held that RCW 7.16 provided necessary procedural safeguards rendering Seattle's licensing ordinance constitutional. We reverse, and hold a portion of Seattle's licensing ordinance unconstitutional because it lacks the minimum procedural safeguards required by article 1, section 5 of the Washington State Constitution.

In facial challenges such as this, we consider only if the language of the ordinance violates the constitution. We

---

[1] JJR, Willows, and Ware will be referred to collectively as JJR.

do not contemplate whether the ordinance would be constitutional "as applied" to the facts of a particular case. *Seattle v. Webster*, 115 Wn.2d 635, 640 n.2, 802 P.2d 1333, 7 A.L.R.5th 1100 (1990), *cert. denied*, 500 U.S. 908 (1991). As a result, the focus is not on how SMC 6.202.230 has been applied to Rick's and its performers. Instead, the language of the ordinance is examined to determine its constitutional validity.

While not contested, Seattle's adult entertainment regulations set forth in SMC 6.270 provide necessary background information. These regulations, enacted to promote public health, safety, and general welfare, are numerous and extensive. SMC 6.270.010(A). For example, nude dancing may occur only on a stage set back from the audience. SMC 6.270.100(A)(1). Adult entertainers, when nude or seminude, are prohibited from mingling with patrons. SMC 6.270.100-(A)(3). Adult entertainers may not engage in sexual contact with patrons, nor with one another. SMC 6.270.100(A)(4)(b), (c); SMC 6.270.100(A)(5).

Violation of the adult entertainment regulations can result in license revocation or suspension proceedings under SMC 6.202.230.[2] JJR argues that the administrative procedures pursuant to SMC 6.202.230 act as a prior restraint on protected expression and, therefore, must provide certain procedural safeguards such as a stay of adult entertainment license revocation and suspension pending judicial review. We turn now to those procedures.

Seattle authorizes police officers to conduct routine inspections of adult entertainment establishments. SMC 6.202-.360(D). When a police officer finds a violation, a police incident report is filed. This sets into motion administrative proceedings for license revocation or suspension.

The finance director of Seattle (Director) or a representative reviews the police incident report and determines whether to revoke or suspend the license. Upon revocation or suspension,

---

[2]SMC 6.202.230 provides, in part: "A license may be suspended, denied or revoked for violation of any ordinance or law which regulates licensed activity in order to further the public interest in public health, safety, and welfare."

the Director provides the licensee with a written statement that includes the basis for the decision and notice of the right to an administrative hearing. SMC 6.202.260. A licensee can contest the Director's decision by filing a notice of appeal with the hearing examiner within 10 days. SMC 6.202.270(A). If an appeal is not pursued, the Director's decision becomes final. SMC 6.202.270(C). The licensee generally may continue to engage in the licensed activity pending a decision by the hearing examiner. SMC 6.202.280.

The hearing examiner is part of Seattle's administrative scheme for licensing appeals and may affirm or deny the Director's determinations. SMC 6.202.300. The hearing examiner's function is quasi-judicial, *Francisco v. Board of Directors of Bellevue Pub. Schs., Dist. 405*, 85 Wn.2d 575, 579, 537 P.2d 789 (1975), and the Director's decisions are reviewed de novo. Strict rules of evidence do not apply at an administrative hearing; instead the examiner "shall admit and give probative effect to evidence which possesses probative value". SMC 3.02.090(J). The hearing examiner's decision is final when mailed to the licensee. The Director has discretionary power to stay enforcement of the revocation or suspension pending judicial consideration. SMC 6.202.310. While the licensing ordinance contains no provisions for judicial review following a hearing examiner's decision, a licensee may file a writ of review in superior court under the general certiorari statute. RCW 7.16.030; *see Responsible Urban Growth Group v. Kent*, 123 Wn.2d 376, 384, 868 P.2d 861 (1994).

PRIOR RESTRAINT

■ An establishment featuring nude dancing may not operate under a revoked or suspended adult entertainment premise's license; similarly, an individual whose adult entertainment license has been revoked or suspended may not perform nude dance anywhere in Seattle.[3] Seattle argues that license revocation or suspension operates merely as a subsequent punishment for nude conduct violating the adult

---

[3]Performing under a revoked or suspended license can result in criminal prosecution. SMC 6.202.320.

entertainment regulations. While it is true that nude *conduct* has no constitutional protection, *O'Day v. King Cy.*, 109 Wn.2d 796, 749 P.2d 142 (1988), nude *dancing* is protected expression under both Const. art. 1, § 5 and the First Amendment. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565, 115 L. Ed. 2d 504, 111 S. Ct. 2456 (1991); *O'Day*, at 803. The fact that license revocation or suspension prohibits individuals from performing nude dance raises concerns that the government is engaging in a prior restraint of constitutionally protected expression.

■■ Under Const. art. 1, § 5, we have held that prior restraint of constitutionally protected expression is per se unconstitutional. *O'Day*, at 804 (citing *State v. Coe*, 101 Wn.2d 364, 374-75, 679 P.2d 353 (1984)).[4] Prior restraints are "official restrictions imposed upon speech or other forms of expression in advance of actual publication." *Seattle v. Bittner*, 81 Wn.2d 747, 756, 505 P.2d 126 (1973) (quoting Thomas I. Emerson, *The Doctrine of Prior Restraint*, 20 L. & Contemp. Probs. 648 (1955)). Licensing power operates as a prior restraint when used as an "instrument of punishment". *Bittner*, at 755.[5] Licensing of constitutionally protected expression places censorship power in the hands of government, and government officials who attempt to control future expression through license revocation and suspension engage in a prior restraint. This is inimical to protection of free expression under Const. art. 1, § 5.

■ While we upheld a similar adult entertainment licensing scheme in *O'Day*, we based our ruling on double jeopardy principles and did not engage in a prior restraint analysis.

---

[4]Under the First Amendment, a system of prior restraint is not presumptively unconstitutional but comes before the court "bearing a heavy presumption against its constitutional validity". *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 9 L. Ed. 2d 584, 83 S. Ct. 631 (1963).

[5]While in *Soundgarden v. Eikenberry*, 123 Wn.2d 750, 871 P.2d 1050 (1994) we described prior restraint as "prohibit[ing] future speech, as opposed to punishing past speech", government licensing was not at issue. (Citations omitted.) *Soundgarden*, at 764.

*O'Day*, at 816-18. Although *O'Day* recognized that license revocation differs from license denial because revocation implies that the licensee violated the terms of the license, *O'Day*, at 817, both license denial and license revocation lead to the future suppression of constitutionally protected speech and as a result constitute prior restraint. Seattle relies on the argument that license revocation and suspension differ from outright license denial because they occur "*after* the licensee has violated the Ordinance, *not* prior to the licensee's dance." Br. of Resp't Seattle, at 13. However, the relevant issue is whether license revocation and suspension prohibit future expression protected under Const. art. 1, § 5.

We are sensitive to the dangers of prior restraint and have invalidated legislation on this basis. For example, in *Seattle v. Bittner, supra,* we held that government officials engage in prior restraint when they attempt to limit obscenity by denying adult entertainment licenses to applicants who previously engaged in illicit activities. Although license denial acts as a punishment for unlawful activity, it nevertheless constitutes a prior restraint because it suppresses future, protected expression. *Bittner*, 81 Wn.2d at 755.

Seattle argues that license revocation and suspension operate as a postpublication sanction similar to the one upheld in *Bering v. Share*, 106 Wn.2d 212, 721 P.2d 918 (1986), *cert. dismissed*, 479 U.S. 1050 (1987). Seattle maintains that like the antiabortion picketers in *Bering*, nude dancers who abuse their free speech rights can be deprived of them. However, *Bering* recognized that postpublication sanctions take only one of two forms: "(1) an award of damages in a tort action, or (2) an injunctive order prohibiting further dissemination of speech." *Bering*, at 243. License revocation and suspension fall outside this limited definition of postpublication sanctions. Moreover, the picketers in *Bering* were prohibited from protesting directly in front of a medical clinic, but were still permitted to engage in demonstrations nearby. License revocation, in comparison, amounts to the total suppression of protected expression.

Neither party disputes that a licensee may not engage in future performances of nude dance in Seattle with a revoked or suspended license. Under Const. art. 1, § 5, when a municipality prevents individuals from performing protected nude expression, and establishments from showcasing nude dance, this amounts to a prior restraint of protected expression.[6]

## PROCEDURAL SAFEGUARDS

This court previously has held that prior restraint of protected expression is per se unconstitutional. *O'Day v. King Cy.*, 109 Wn.2d 796, 804, 749 P.2d 142 (1988). Nude dancing has expressive value requiring constitutional protection, but

---

[6]Prior to the United States Supreme Court decision in *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 92 L. Ed. 2d 568, 106 S. Ct. 3172 (1986), federal courts readily invalidated licensing of protected expressive activity where licenses were revoked or suspended upon finding businesses engaged in prohibited activity. License revocation or suspension was universally considered a prior restraint because it prevented theaters, clubs, and bookstores from engaging in any and all protected expression during the period of revocation. *Paducah v. Investment Entertainment, Inc.*, 791 F.2d 463 (6th Cir. 1986); *Cornflower Entertainment, Inc. v. Salt Lake City Corp.*, 485 F. Supp. 777 (D. Utah 1980); *Gayety Theatres, Inc. v. Miami*, 719 F.2d 1550 (11th Cir. 1983); *Entertainment Concepts, Inc., III v. Maciejewski*, 631 F.2d 497 (7th Cir. 1980).

In 1986, however, the United States Supreme Court in *Arcara* upheld the closure of a bookstore for allowing prostitution to occur on the premises. The closure was pursuant to a public health statute — not a licensing statute — and the Supreme Court held it did not constitute a prior restraint because the bookstore was not prohibited from opening elsewhere. *Arcara*, at 705 n.2. Although *Arcara* did not concern the revocation or suspension of a business license, the Tenth Circuit in *O'Connor v. Denver*, 894 F.2d 1210 (10th Cir. 1990) relied on *Arcara* to hold that revocation and suspension of amusement licenses do not constitute a prior restraint. Not all courts agree with *O'Connor's* interpretation of *Arcara*. For example, *State v. Bauer*, 159 Ariz. 443, 768 P.2d 175 (Ct. App. 1989), held that a system requiring businesses convicted of obscenity to relinquish all operating licenses constituted a prior restraint, and *Arcara* "ha[d] no application". *Bauer*, at 455.

Conflict presently exists in the federal courts in interpreting the constitutionality of revocation and suspension of entertainment licenses. However, it is well settled that article 1, section 5 of the Washington State Constitution provides broader free speech protection than the first amendment to the United States Constitution, *O'Day v. King Cy.*, 109 Wn.2d 796, 802, 749 P.2d 142 (1988), and we reach today's decision solely on the basis of the Washington State Constitution.

it remains far from the core of protected expression. While protection of political and other forms of speech is absolutely central to the meaning of Const. art. 1, § 5, nude dancing performed at an adults-only nightclub clings to the edge of protected expression. As such, we decline to categorically invalidate an administrative scheme that revokes or suspends an adult entertainment license.

Nevertheless, the licensing of adult entertainment carries with it the possibility of unwarranted censorship and, therefore, must contain sufficient procedural safeguards. Because we must be exacting in safeguarding protected expression, we find that a stay of adult entertainment license revocation and suspension pending judicial review is the minimum constitutionally permissible safeguard.

The Court of Appeals in *D.C.R. Entertainment, Inc. v. Pierce Cy.*, 55 Wn. App. 505, 511-12, 778 P.2d 1060 (1989) struck down an adult entertainment licensing scheme involving the denial of licenses to nude dancing establishments, in part because the administrative procedures failed to require a stay of the license revocation or suspension pending judicial review. The suspension of a license offers an even more pressing reason for requiring the maintenance of the status quo pending judicial review. A licensee, whose license has been suspended for a relatively brief period of time, has no incentive to seek judicial review if the period of suspension is completed before a judicial outcome. Even if there were strong evidence that the license was suspended erroneously, the licensor's actions would be insulated because the licensee would have no incentive to seek judicial review. Furthermore, any judicial outcome would be moot if the period of license suspension had been completed.

Seattle argues that the writ of review under RCW 7.16 provides a stay of license revocation or suspension pending judicial review. As already stated, RCW 7.16 allows a licensee to seek review in superior court. Under RCW 7.16.070, once the writ of review is granted it must direct Seattle "to desist

from further proceedings in the matter to be reviewed". Nonetheless, RCW 7.16.070 is followed immediately by RCW 7.16.080[7] which gives the court discretion to stay the revocation or suspension. Interpreting RCW 7.16.070 to mean "automatic stay" disregards the court's discretionary power provided in RCW 7.16.080. When interpreting statutes, the court must assume that the Legislature does not engage in meaningless acts. *State v. McCullum*, 98 Wn.2d 484, 493, 656 P.2d 1064 (1983).

■ Furthermore, the administrative licensing scheme specifically does not require a mandatory stay of the revocation and suspension pending judicial review. Under SMC 6.202.310, the hearing examiner's decision is final when mailed, and a stay of license revocation or suspension is at the discretion of the Director. Since SMC 6.202.230 explicitly precludes a mandatory stay, we strike this portion of the licensing ordinance as unconstitutional in the context of adult entertainment licenses.[8] The remaining portions of the ordinance remain intact and constitutional.

> It is a well-recognized rule of constitutional law that, where the unconstitutional portion of an act is severable from the rest, the portion which is constitutional may stand, and that which is unconstitutional may be stricken out and rejected.

(Citations omitted.) *State v. Grabinski*, 33 Wn.2d 603, 612, 206 P.2d 1022 (1949). Until Seattle enacts a mandatory stay, however, the ordinance is unconstitutional in the context of nude dancing adult entertainment.[9]

An administrative licensing scheme must provide a stay of adult entertainment license revocation or suspension pend-

---

[7]RCW 7.16.080 states: "If a stay of proceedings be not intended, the words requiring the stay must be omitted from the writ. These words may be inserted or omitted, in the sound-discretion of the court, but if omitted the power of the inferior court or office is not suspended or the proceedings stayed."

[8]It is unclear whether this administrative licensing scheme applies only to adult entertainment licenses.

[9]Seattle may enact emergency measures to further public health and safety. Seattle City Charter art. 4, § 1(I).

ing judicial review. Freedom of expression is fundamental to our scheme of government. Flawed procedural safeguards potentially lead to unwarranted revocation or suspension of licenses with the consequent suppression of protected expression. While today's decision creates a very narrow exception to the prohibition of prior restraint, we reaffirm our steadfast commitment to preserving the broad scope of free speech protection under Const. art. 1, § 5.

### ATTORNEY FEES

JJR brought this action under 42 U.S.C. § 1983 and is awarded attorney fees on this basis. 42 U.S.C. § 1988. We remand to the Superior Court for a determination of the total amount of fees and expenses, both at trial and on appeal, pursuant to RAP 18.1(i).

UTTER, DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., and ANDERSEN and BRACHTENBACH, JJ. Pro Tem., concur.

Reconsideration denied June 9, 1995.