# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| ERIC FORBES, ALEX HELGESON, SABINA ZEMBAS, DREAMGIRLS OF TACOMA LIMITED LIABILITY COMPANY, a Washington Limited Liability Corporation, ASHLEY RICHARDSON, and HEATHER BLAKEWAY, | No. 51548-2-II |
| Appellants, | |
| vs. | PUBLISHED OPINION |
| PIERCE COUNTY, a Washington Municipal Corporation, JULIE ANDERSON, Pierce County Auditor, and STEPHEN K. CAUSSEAUX, Pierce County Hearing Examiner, | |
| Respondents. | |

MAXA, C.J. – Eric Forbes, Ashley Richardson, and Heather Blakeway (collectively, appellants) challenge the constitutionality of certain sanction provisions in the Pierce County Code (PCC) chapter regulating erotic dance studios. PCC 5.14.230 allows the County to suspend or revoke the licenses issued to erotic dance studio operators, managers, and dancers if they violate or permit the violation of erotic dance studio regulations. PCC 5.14.250 provides criminal penalties for violating erotic dance studio regulations and states that managers on duty and erotic dance studio operators are strictly liable for violations of substantive regulations in chapter 5.14 PCC. The appellants do not challenge those substantive regulations, which primarily are contained in PCC 5.14.180 and .190.

The appellants argue that the sanction provisions constitute an unconstitutional prior restraint of erotic dance, which is protected expression, because the provisions impose strict

liability for violations. They also argue that the sanction provisions violate due process for the same reason. Pierce County argues that Forbes and Richardson do not have standing to challenge PCC 5.14.230 and that none of the appellants have standing to challenge PCC 5.14.250.

We hold that (1) the appellants have standing to challenge PCC 5.14.230, but they do not have standing to challenge PCC 5.14.250 because no criminal penalties were imposed or threatened; (2) PCC 5.14.230 operates as a prior restraint of protected erotic dance but is not unconstitutional under article I, section 5 of the Washington Constitution because it does not allow the imposition of sanctions based on strict liability; (3) PCC 5.14.230 is not unconstitutional under a First Amendment analysis for time, place, or manner restrictions; and (4) PCC 5.14.230 does not violate due process because it does not allow the imposition of sanctions based on strict liability. Accordingly, we affirm the trial court's summary judgment order dismissing the appellants' complaints.

FACTS

At the relevant times, each of the appellants held licenses issued under chapter 5.14 PCC. Forbes, doing business as Dreamgirls of Tacoma, LLC, is the licensee and operator of an erotic dance studio known as Dreamgirls at Fox's (Fox's). Ashley Richardson is a licensed manager at Fox's and Heather Blakeway is a licensed dancer at Fox's.

*Violations and Hearing Examiner Rulings*

Between April and August 2014, the County conducted several licensing inspections and compliance checks at Fox's. The inspections revealed multiple violations of regulations in chapter 5.14 PCC. In August 2014, the auditor's office sent Forbes a notice and order to correct,

which identified violations of PCC 5.14.110, .180, and .190 and explained how to correct them. The notice stated,

> Failure of the establishment to comply with this order may result in further enforcement action being taken. Examples of enforcement may include: suspension of establishment license, revocation of establishment license, fines. Failure to comply with the compliance instructions contained in this order will constitute sufficient grounds for suspension or revocation of the license.

Clerk's Papers (CP) at 318. The notice did not at that time suspend Forbes's license to operate an erotic dance studio, impose any civil sanction for the violations, or impose or threaten a criminal penalty.

Forbes appealed the notice and order to a county hearing examiner, who conducted a formal hearing and entered findings of fact and conclusions of law. After reviewing the allegations in detail, the hearing examiner found that the County proved the alleged violations by a preponderance of the evidence and denied Forbes's appeal.

Subsequently, the auditor's office conducted additional site visits at Fox's and observed violations of chapter 5.14 PCC. In response to these alleged violations, the auditor's office sent both Richardson and Blakeway a notice and order of suspension. The notices stated that Blakeway was dancing off the platform, that a patron was seated too close to Blakeway while she was dancing on the platform, and that Richardson was present while those violations occurred. Richardson, as the manager at the time, was required to ensure compliance. The notices stated that both of their licenses would be suspended for 30 days, with the suspension effective immediately unless it was appealed. Neither notice imposed a criminal penalty.

Both Richardson and Blakeway appealed to the hearing examiner, who conducted formal hearings and entered findings and conclusions on both appeals. The hearing examiner found that

the County proved the alleged violations by a preponderance of the evidence, but modified the period of suspension to 15 days for Richardson and 10 days for Blakeway.

*Petition for Writ of Review and Complaint*

Forbes, Richardson, and Blakeway all filed petitions for writs of review and complaints for injunction and declaratory relief against the County in superior court. Each petition alleged that substantial evidence did not support the hearing examiner's decision, that the hearing examiner made a legal error regarding application of strict liability, and that PCC 5.14.180, .190, .230, and .250 violated the Washington Constitution. The cases subsequently were consolidated.

The parties filed cross-motions for summary judgment. The superior court entered an order granting the County's motion and denying the appellants' motion. The court first considered the appellants' constitutional arguments and ruled, "None of the challenged sections of Chapter 5.14 PCC, nor Chapter 5.14 PCC as a whole, violate the free speech or due process clauses of the Washington State Constitution." CP at 827. Regarding the appellants' petition for a writ of review, the court ruled that substantial evidence supported the hearing examiner's decisions. On that basis, the court affirmed the hearing examiner's decisions regarding Forbes, Richardson, and Blakeway.

The appellants sought direct review in the Supreme Court of the summary judgment order. The Supreme Court ordered that the case be transferred to this court.

ANALYSIS

A.    LEGAL PRINCIPLES

1.    Standard of Review

We review the superior court's summary judgment order de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). On summary judgment, we construe all evidence and

4

reasonable inferences in favor of the nonmoving party. *Id.* Summary judgment is appropriate when the record shows "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c); *see Keck*, 184 Wn.2d at 370.

Here, the superior court issued a summary judgment order with numbered paragraphs setting forth its detailed analysis of the appellant's constitutional claim. Because our review is de novo, we do not rely on or give deference to the superior court's reasoning.

2. Chapter 5.14 PCC

The appellants each held licenses issued pursuant to chapter 5.14 PCC, which relates to the licensing and regulation of the adult entertainment industry in Pierce County. Chapter 5.14 PCC applies a licensing scheme to "erotic dance studios" and imposes substantive requirements on erotic dance studio operator, studio manager, and dancer licensees. The chapter outlines the process for persons to apply for and receive an erotic dance studio license, PCC 5.14.030-.090, and requires all managers and dancers to obtain licenses. PCC 5.14.100, .110.

PCC 5.14.180 imposes requirements on managers, and states that "[t]he manager shall be responsible for ensuring" that both the studio and the dancers comply with restrictions in PCC 5.14.190. PCC 5.14.180(D), (E). PCC 5.14.190 designates a number of unlawful acts, including any dancing other than on an 18-inch platform that is 10 feet from the nearest patron, PCC 5.14.190(H), touching between patrons and dancers, PCC 5.14.190(I), (J), and dancers exposing themselves except on the platform. PCC 5.14.190(H), (I), (J), (M).

PCC 5.14.230(A) allows the county auditor to revoke or suspend the license of an erotic dance studio operator if the licensee has "violated or permitted violation" of any of the chapter's provisions. PCC 5.14.230(B) applies the same provision to managers and dancers. In addition, PCC 5.14.250 states that a person, firm, or corporation that violates any of the chapter's

provisions is guilty of a misdemeanor, punishable by up to a $1,000 fine or 90 days imprisonment. PCC 5.14.250 states that the manager on duty or erotic dance studio operator "shall be held strictly liable for any violation of the requirements set forth in PCC 5.14.180 and/or 5.14.190."

The process for appealing a decision by the auditor is set out in PCC 5.02.120. A licensee has the right to appeal a decision by submitting a written notice of appeal and paying a fee within 10 days of the decision. PCC 5.02.120(A). The appeal must be heard within 90 days by a hearing examiner. PCC 5.02.120(B). On appeal, the County bears the burden of proof to show by a preponderance of the evidence that the standards for suspending or revoking a license have been met. PCC 5.02.120(E). Filing a timely notice of appeal stays the auditor's decision until a final decision by the hearing examiner. PCC 5.02.120(C). The hearing examiner's decision is final unless a writ of review is filed in the superior court within 20 days from the decision. PCC 5.02.120(J).

This court upheld several challenged portions of chapter 5.14 PCC in *DCR, Inc. v. Pierce County*, 92 Wn. App. 660, 964 P.2d 380 (1998). The primary focus of the court's opinion was the 10-foot distance restriction, which this court held was a valid regulation of the time, place, and manner of protected expression. *Id.* at 683. The court also upheld the chapter 5.14 PCC provisions on issuing licenses and appealing adverse licensing decisions. *Id.* at 686-89.

B.    APPELLANTS' STANDING

As an initial matter, the County challenges the appellants' standing.[1] First, the County argues that Forbes and Richardson lack standing to challenge PCC 5.14.230 because, unlike

---

[1] The County did not argue in the superior court that the appellants did not have standing to challenge the constitutionality of PCC 5.14.230 or .250. As a result, Forbes argues that the County cannot raise this issue on appeal. However, because a party's standing goes to this

Blakeway, they were not personally engaged in protected expression. Second, the County suggests that the appellants lack standing to challenge PCC 5.14.250 because no criminal penalty was assessed against them under that provision. We hold that Forbes and Richardson have standing to challenge PCC 5.14.230, but that the appellants lack standing to challenge PCC 5.14.250.

    1.    Legal Background

Standing refers to a party's right to make a legal claim or seek judicial enforcement of a right. *Friends of N. Spokane County Parks v. Spokane County*, 184 Wn. App. 105, 115, 336 P.3d 632 (2014). A litigant cannot assert the legal rights of another person and must have a real interest before bringing a cause of action. *Dean v. Lehman*, 143 Wn.2d 12, 18-19, 18 P.3d 523 (2001). The rule is that a person who is not adversely affected by a statute may not challenge the statute's validity. *Id.* at 18. For that reason, to challenge a statute's constitutionality, a party must demonstrate that the statute has operated to the party's prejudice. *Postema v. Snohomish County*, 83 Wn. App. 574, 579, 922 P.2d 176 (1996).

    2.    Standing to Challenge PCC 5.14.230

Here, Richardson has standing to challenge PCC 5.14.230(B) because her license was suspended under that provision. The statute has adversely affected her and she has a real interest in challenging its validity. *Dean*, 143 Wn.2d at 18-19.

Similarly, the suspension of Richardson's and Blakeway's licenses under PCC 5.14.230(B) adversely affected Forbes because his employees were not available to manage and dance at his erotic dance studio. The Ninth Circuit addressed the same issue in *Clark v. City of*

---

court's jurisdiction, it can be raised either for the first time on appeal or by this court sua sponte. *Jevne v. The Pass, LLC*, 3 Wn. App. 2d 561, 565, 416 P.3d 1257 (2018); *see* RAP 2.5(a).

*Lakewood*, and held that the owner of an adult cabaret suffered an injury in fact regarding a regulation placing limitations on issuing licenses for his employees. 259 F.3d 996, 1010-11 (2001). The court stated that the owner could not operate his business without licensed employees, and therefore he would be unable to engage in expressive activity if the City did not license his employees. *Id.* at 1011.[2] For the same reason, Forbes has standing to challenge the suspensions of his employees' licenses under PCC 5.14.230(B).

A different analysis applies for Forbes's challenge to PCC 5.14.230(A), which allows sanctions to be imposed against him as the licensee of the erotic dance studio. Unlike Richardson, Forbes's license has not been revoked or suspended under PCC 5.14.230(A). The County's notice and order to correct listed only a series of violations identified at Fox's, but did not impose any sanction. The record does not show that a sanction was imposed at a later time.

However, the County's notice and order describes observed violations of PCC 5.14.180 and .190 and directs that Forbes correct those violations. The order further states that Forbes's failure to comply with the order may result in further enforcement action being taken, including suspension or revocation of his license. And the order states that failure to comply will constitute sufficient grounds for license suspension or revocation. Although the order does not reference PCC 5.14.230(A), that provision provides the only authority for the County to impose those sanctions. As a result, under the specific facts of this case PCC 5.14.230(A) adversely affected Forbes.

---

[2] Federal standing doctrine, although distinct, can be instructive. *See Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports*, 146 Wn.2d 207, 212-17, 45 P.3d 186 (2002).

We hold that both Forbes and Richardson have standing to challenge the constitutionality of PCC 5.14.230(B) and that Forbes has standing to challenge the constitutionality of PCC 5.14.230(A).

3. Standing to Challenge PCC 5.14.250

The County suggests that the appellants do not have standing to challenge PCC 5.14.250.[3] We agree.

Here, no criminal penalties were assessed under PCC 5.14.250 against any of the appellants. Therefore, PCC 5.14.250 has not adversely affected them.. The appellants do not argue otherwise.

Instead, the appellants argue that they have standing to challenge PCC 5.14.250 because they intend to engage in constitutionally protected conduct in the future and there is a credible threat of prosecution. They cite two Supreme Court cases: *Susan B. Anthony List v. Driehaus*, ___ U.S. ___, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014), and *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979). These cases recognize that "[w]hen an individual is subject to such a threat [of enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List*, 132 S. Ct. at 2342. The Court explained that a plaintiff may bring a pre-enforcement challenge if he or she alleges "'an intention to engage in a course of conduct'" arguably protected by the Constitution, but proscribed by statute, when there has been a credible threat of prosecution. *Id.* (quoting *United Farm Workers*, 442 U.S. at 298).

---

[3] The County only vaguely makes this argument, and it did not raise the issue in the trial court. However, as noted above, we can raise standing sua sponte even if the parties do not argue standing. *Jevne*, 3 Wn. App. 2d at 565. And the appellants do discuss standing to challenge PCC 5.14.250 in their reply brief. Therefore, we address standing regarding PCC 5.14.250.

The appellants' situation does not fit these requirements because they have not adequately demonstrated a threat of enforcement. First, the appellants have not demonstrated a *current* threat to impose a criminal penalty. Forbes's notice and order to correct states that failure to comply may result in further enforcement action, but concludes only that "[f]ailure to comply with the compliance instructions . . . will constitute sufficient grounds for *the suspension or revocation of the license*." CP at 318 (emphasis added). The letter references a fine as an example of enforcement, but does not indicate any intent to impose criminal penalties. The notice and order of suspension sent to Richardson and Blakeway do not threaten a future criminal penalty in any form.

Second, the appellants have not shown a risk of future, potential criminal enforcement based on their anticipated conduct. The United States Supreme Court has granted standing to parties that allege an intent to engage in conduct they assert is protected. *Susan B. Anthony List*, 134 S. Ct. at 2343-44; *United Farm Workers*, 442 U.S. at 301-03 (recognizing standing to challenge substantive restriction and penalty provision). By showing that they intended to engage in future conduct, the plaintiffs demonstrated that "fear of criminal prosecution . . . is not imaginary or wholly speculative." *United Farm Workers*, 442 U.S. at 302.

Because there is not a current threat of criminal penalty, the appellants' standing to challenge PCC 5.14.250 must be based on future violations. But they have not made any allegation that they intend to engage in conduct prohibited by chapter 5.14 PCC in the future. Therefore, whether any violation of chapter 5.14 PCC will occur and whether the appellants will be subject to criminal sanction at that point is speculative. If any of the appellants violates chapter 5.14 PCC in the future and is subject to a criminal penalty under PCC 5.14.250, he or she can challenge the statute's constitutionality at that time.

Accordingly, we hold that the appellants lack standing to challenge PCC 5.14.250.

C.    CONSTITUTIONALITY OF PCC 5.14.230 UNDER ARTICLE I, SECTION 5

The appellants argue that PCC 5.14.230's license suspension provisions are unconstitutional prior restraints that violate article I, section 5 of the Washington Constitution. Specifically, the appellants argue that (1) article I, section 5 provides greater protection for erotic dancing than the First Amendment, and (2) PCC 5.14.230 allows for the suspension of erotic dance licenses based on strict liability, in violation of those article I, section 5 protections.

We agree that under settled law the suspension of erotic dance licenses constitutes a prior restraint and article I, section 5 provides greater protection for erotic dancing than the First Amendment. But we disagree that PCC 5.14.230 allows the suspension of erotic dance licenses based on strict liability, and therefore we reject the appellants' article I, section 5 challenge.

1.    Legal Background

a.    Constitutional Protection of Sexually Explicit Dancing

Nude or sexually explicit dancing has expressive value that is protected under both the First Amendment and article I, section 5. *JJR Inc. v. City of Seattle*, 126 Wn.2d 1, 6, 8-9, 891 P.2d 720 (1995). However, sexually explicit dancing "remains far from the core of protected expression" and "clings to the edge of protected expression." *Id.* at 9. As a result, sexually explicit dancing does not receive the full protection of article I, section 5. *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 116, 937 P.2d 154 (1997); *see DCR*, 92 Wn. App. at 671. And other types of conduct that may be associated with sexually explicit dance are entirely unprotected. *O'Day v. King County* 109 Wn.2d 796, 803, 749 P.2d 142 (1988); *DCR*, 92 Wn. App. at 672.

b. License Suspension/Revocation as a Prior Restraint of Speech

The appellants argue that license suspension and revocation provisions of PCC 5.14.230 constitute a prior restraint on sexually explicit dancing. We agree.

A prior restraint attempts to prohibit future speech or other expression rather than punish past expression. *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 802, 231 P.3d 166 (2010). A prior restraint acts as an official restriction on expression before the expression occurs. *Id.* at 802. More specifically, a prior restraint is any government action that tends to suppress or interfere with protected expression before it is ultimately punished through civil or criminal sanctions in a court of law. *State v. J-R Distribs., Inc.*, 111 Wn.2d 764, 776, 765 P.2d 281 (1988).

The government imposes a prior restraint when it suspends or revokes a sexually explicit dance license because rescinding a license prevents individuals from "performing protected nude expression, and establishments from showcasing nude dance." *JJR*, 126 Wn.2d at 8. For example, in *JJR* the Supreme Court addressed an ordinance similar to PCC 5.14.230 that allowed for the suspension or revocation of establishment and dancer licenses for violation of adult entertainment regulations. *Id.* at 4. The court held that such a license suspension or revocation would prevent a person from performing nude dance in the future, and the future suppression of constitutionally protected speech constitutes a prior restraint. *Id.* at 5-8.

The court in *JJR* expressly rejected the argument that license revocation and suspension merely represented post-publication sanctions. *Id.* The court emphasized that "a licensee may not engage in future performances of nude dance . . . with a revoked or suspended license." *Id.* at 8. The court concluded, "Under [article 1, section 5], when a municipality prevents

12

individuals from performing protected nude expression, and establishments from showcasing nude dance, this amounts to a prior restraint of protected expression." *Id.*

The court in *JJR* did not distinguish between the suspension or revocation of an operator's license and a dancer's license in its analysis of prior restraint. *Id.* at 5; *see also Ino Ino*, 132 Wn.2d at 119. Similarly, the court in *Ino Ino* held that a delay in issuing a manager's license constituted a prior restraint. *Id.* at 123.

Accordingly, the suspension or revocation of an operator's, a manager's, and a dancer's license under PCC 5.14.230 constitutes a prior restraint of sexually explicit dancing, a form of constitutionally protected expression.

c. Protection Against Prior Restraints Under Article I, Section 5

The appellants argue that article I, section 5 provides greater protection for prior restraint of sexually explicit dancing than the First Amendment. We agree.

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." This provision applies to the states under the Fourteenth Amendment. *Rentz v. Werner*, 156 Wn. App. 423, 433 n.5, 232 P.3d 1169 (2010). In addition, article I, section 5 states, "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right."

In general, the Washington Constitution provides greater protection against prior restraints on speech than the United States Constitution. *O'Day*, 109 Wn.2d at 802, 804. Under the First Amendment, not all prior restraints are prohibited. *State v. Coe*, 101 Wn.2d 364, 372-73, 679 P.2d 353 (1984). Unlike the First Amendment, the Washington Constitution "categorically rules out prior restraints on constitutionally protected speech." *O'Day*, 109 Wn.2d at 804. The text of article I, section 5 "seems to rule out prior restraints under *any*

circumstances, leaving the State with only post-publication sanctions to punish abuse of free speech rights." *Coe*, 101 Wn.2d at 374.

The Supreme Court in *JJR* recognized the general rule that the prior restraint of protected expression is unconstitutional. 126 Wn.2d at 8. However, because sexually explicit dancing "remains far from the core of protected expression," the court declined to "categorically invalidate an administrative scheme that revokes or suspends an adult entertainment license." *Id.* at 9. The court in *Ino Ino* subsequently stated that in *JJR* it had "declined to extend the full protection of art. I, §5 to licensure of nude dancing." 132 Wn.2d at 116.

Because sexually explicit dancing receives only limited protection under article I, section 5, the court in *Ino Ino* applied a *Gunwall*[4] analysis to determine whether sexually explicit dancing is afforded greater protection under the Washington Constitution than under the United States Constitution.[5] *Ino Ino*, 132 Wn.2d at 116-22. The court concluded that article I, section 5 does not provide more protection in the context of restrictions on the time, place, or manner of sexually explicit dance. *Id.* at 122. However, the court held that there is enhanced protection under article I, section 5 "in the context of adult entertainment regulations that impose prior restraints." *Id.*

---

[4] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). *Gunwall* requires an analysis of six factors: "(1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern." *Ino Ino*, 132 Wn.2d at 115.

[5] Forbes argues that this court must conduct a new *Gunwall* analysis because the court in *Ino Ino* did not address what Forbes argues is the specific question at issue here. But the court's analysis in *Ino Ino* is directly applicable. The rights at issue here are the same – "whether nude or sexually explicit dancing is to be afforded greater protection under the state constitution than under its federal counterpart," specifically in the area of prior restraints. *Ino Ino*, 132 Wn.2d at 116. This court need not undertake the same analysis again.

Accordingly, article I, section 5 provides greater protection than the First Amendment for prior restraints imposed by the suspension of an operator's, a manager's, and a dancer's licenses under PCC 5.14.230.

#### d.    Extent of Protection Under Article I, Section 5

The Supreme Court has established that protection for sexually explicit dancing under article I, section 5 is less than the categorical prohibition of prior restraints applicable to most protected speech, but greater than the protection provided by the First Amendment. *Ino Ino*, 132 Wn.2d at 116, 122; *JJR*, 126 Wn.2d at 9.  But the court has not identified the precise extent of the protection for sexually explicit dancing under article I, section 5.

*JJR* and *Ino Ino* provide some guidance regarding the extent of protection under article I, section 5 in the context of suspension of erotic dance licenses.  First, in applying article I, section 5, the court in *JJR* stated that laws regarding the licensing of adult entertainment must contain "sufficient procedural safeguards" because they allow the possibility of unwarranted censorship. 126 Wn.2d at 9.  Specifically, the court stated,

> Because we must be exacting in safeguarding protected expression, we find that a stay of adult entertainment license revocation and suspension pending judicial review is the minimum constitutionally permissible safeguard.

*Id.*  The court further clarified that such a stay must be mandatory. *Id.* at 9-10.  Because the licensing law in that case did not require a mandatory stay of a license suspension or revocation pending judicial review, the court held that the law was unconstitutional. *Id.* at 10-11.

*JJR* establishes that a stay of a license suspension or revocation pending judicial review is the "minimum" requirement under article I, section 5. *Id.* at 9.  But the court did not state that a stay provision was the *only* constitutional protection required. *Ino Ino* addressed one area where

15

a stay would be insufficient, holding that a law providing a 14-day waiting period for issuing licenses would be unconstitutional even with a stay provision. 132 Wn.2d at 123.

Here, the Pierce County Code provides for a stay of a license suspension under PCC 5.14.230 pending judicial review as required in *JJR*. Filing a timely notice of appeal stays the auditor's decision until a final decision by the hearing examiner. PCC 5.02.120(C). And the hearing examiner's decision is not final if a licensee files a timely writ of review in the superior court. *See* PCC 5.02.120(J). The appellants do not challenge PCC 5.14.230 based on the stay procedure.

Second, *Ino Ino* identifies a narrow area in which article I, section 5 provides greater protection than the First Amendment. The court noted that under federal law, laws affecting an operator's license rather than a dancer's license may not constitute prior restraint under article I, section 5. *Ino Ino*, 132 Wn.2d at 118-19. But laws affecting an operator's license do constitute prior restraint under article I, section 5. *Id.* at 121-22. In addition, laws affecting a manager's license constitute prior restraints under article I, section 5. *Id.* at 123.

Here, the County suggests that article I, section 5 does not protect erotic dance studio operators and managers because they do not engage in the expressive conduct themselves. However, *Ino Ino* makes it clear that the suspension of operator and manager licenses implicates article I, section 5.

Beyond these specific requirements, the extent of protection under article I, section 5 of erotic dance in the context of suspension of erotic dance licenses must be developed on a case-by-case basis. We need not address the parameters of this protection here because the appellants argue only that the suspension of licenses based on strict liability violates article I, section 5.

2.    No Strict Liability Under PCC 5.14.230

The appellants argue that (1) PCC 5.14.230 allows the County to suspend the licenses of erotic dance studio operators and managers based on strict liability, and (2) article I, section 5 prohibits suspending erotic dance licenses on the basis of strict liability.  We hold that PCC 5.14.230 does not allow the County to suspend the licenses of erotic dance studio operators, managers, and dancers based on strict liability.  Therefore, PCC 5.14.230 does not violate article I, section 5 on that basis.

a.    Principles of Interpretation

Interpretation of PCC 5.14.230 is a question of law that we review de novo.  *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014).  Our primary goal is to give effect to legislative intent.  *Id.* at 762.  In determining legislative intent, we first look to a statute or ordinance's plain language.  *Id.*  When evaluating an ordinance's language, we consider the language of the provision in question, the context of the ordinance in which the provision is found, and related ordinances.  *Columbia Riverkeeper v. Port of Vancouver USA*, 189 Wn. App. 800, 810, 357 P.3d 710 (2015).  To determine the plain meaning of undefined language, we give words their usual and ordinary meaning and interpret them in the context of the ordinance in which they appear.  *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 395-96, 325 P.3d 904 (2014).  In the context of a constitutional challenge, we have an obligation to construe an ordinance in a manner that upholds its constitutionality.  *DCR*, 92 Wn. App. at 686.

b.    Strict Liability Analysis

PCC 5.14.230(A) applies to erotic dance studio operators and provides:

The Auditor shall revoke or suspend, for a specified period of not more than one year, any erotic dance studio license if he/she determines that the licensee or applicant has: made a materially false statement in the application for a license

17

which the applicant knows to be false; or violated *or permitted violation* of any provisions of this Chapter.

(Emphasis added).  PCC 5.14.230(B) provides the same revocation or suspension sanction to managers and dancers:

The Auditor shall revoke or suspend, for a specified period of not more than one year, any dancer/manager license if he/she determines that the licensee or applicant has: made a materially false statement in the application for a license which the applicant knows to be false; or violated *or permitted violation* of any provisions of this Chapter.

(Emphasis added).

The appellants argue that these provisions allow for suspension of an erotic dance studio operator's or manager's license arising from a dancer's violation of PCC 5.14.190 based on strict liability, even in the absence of some fault by the operator or manager.  The appellants claim that in the absence of a requirement that the operator or manager knew or should have known of the violation, PCC 5.14.230 constitutes an unconstitutional prior restraint.

A manager can violate PCC 5.14.180(D) and (E) and be subject to sanctions under PCC 5.14.230 by not "ensuring" that the studio or the dancers comply with the restrictions in PCC 5.14.190.  This provision does not involve strict liability.  A failure to ensure compliance necessarily involves some fault by the manager.

We also interpret PCC 5.14.230 as requiring some fault before an erotic dance studio operator or manager can be sanctioned.  Under PCC 5.14.230, an operator or a manager can be subject to sanctions by "permitting" a violation of one of the erotic dance studio regulations.  But "permitting" does not involve strict liability.  One dictionary definition of "permit" is to "consent to expressly or formally."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1683 (2002).  Under this definition, an operator or manager can permit – consent to – an activity when he or she knows that the activity is occurring and fails to take steps to stop that activity.

Another dictionary definition of "permit" is to "make possible" or to "give an opportunity." WEBSTER'S at 1683. Under this definition, an operator or manager can permit – make possible – an activity by not taking steps before the activity occurs to prevent that activity.

Under either definition, operators and managers can be subject to sanctions under PCC 5.14.230 only if their conduct involves some fault. As a result, we hold that PCC 5.14.230 does not allow the imposition of sanctions in the absence of a finding of fault.

The same analysis applies with respect to dancers' liability for patrons' actions. PCC 5.14.190 specifically prohibits certain unlawful actions by patrons. For example, a patron cannot pay or give any gratuity directly to any dancer. PCC 5.14.190(K). A dancer's license could be revoked or suspended based on this provision only if the dancer *permitted* the violation to occur, requiring the dancer to have some fault regarding the actions of patrons. Therefore, as with operators and managers, dancers are not strictly liable for the prohibited actions of patrons.

Because PCC 5.14.230 does not allow for the suspension of a license based on strict liability, we hold that PCC 5.14.230 does not violate article I, section 5 on that basis. Because the appellants' prior restraint claim is based only on its argument that PCC 5.14.230 imposes strict liability, we reject the appellants' challenge to PCC 5.14.230 based on article I, section 5.

D. INAPPLICABILITY OF TIME, PLACE, AND MANNER RESTRICTIONS ANALYSIS

The appellants argue that PCC 5.14.230 is unconstitutional under the First Amendment analysis used to determine the constitutionality of time, place, and manner restrictions on protected expression. Appellants apparently concede that PCC 5.14.230 is not a time, place, and manner restriction, but suggest that we apply the time, place, and manner analysis to the prior restraint imposed under PCC 5.14.230. We decline to apply this analysis to PCC 5.14.230.

19

A time, place, or manner restriction on speech or expression is one that does not prohibit expression but imposes temporal or geographic limitations. *Ino Ino*, 132 Wn.2d at 126. Restrictions on the time, place, and manner of sexually explicit dance receive no greater protection under article I, section 5 than the First Amendment. *Id.* at 122. Therefore, we analyze challenges to time, place, and manner restrictions under the First Amendment. *Id.*

Here, PCC 5.14.230 is not a restriction on the time, place, or manner of expression. The provision does not place any substantive limits on how a license holder may engage in any form of expression. Instead, PCC 5.14.230 provides for the sanctions the County may impose if an operator, manager, or dancer violates requirements contained in other sections.[6]

The appellants provide no compelling reason to apply the time, place, or manner analysis in a prior restraint context. And neither *JJR*, *Ino Ino*, nor any other case has applied this analysis to evaluate a prior restraint. Accordingly, we hold that the analysis for time, place, and manner restrictions under the First Amendment is inapplicable to PCC 5.14.230.

E.    CONSTITUTIONALITY OF PCC 5.14.230 – DUE PROCESS

Forbes argues that PCC 5.14.230 violates article I, section 3, the due process provision of the Washington Constitution, because it imposes strict liability on erotic dance studio operators, managers, and dancers for violations of erotic dance studio regulations. As discussed above, PCC 5.14.230 does not allow the imposition of sanctions based on strict liability. Therefore, we reject the appellants' due process challenge on this basis.

---

[6] PCC 5.14.190 does impose time, place, and manner restrictions on sexually explicit dance, and violation of that section subjects a license holder to sanctions under PCC 5.14.230. However, the appellants emphasize that they are not challenging the constitutionality of PCC 5.14.190.

CONCLUSION

We affirm the trial court's summary judgment order dismissing the appellants'
complaints.

_____
MAXA, C.J.

We concur:

_____
SUTTON, J.

_____
PRICE, J. PRO TEM